**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3128
_____

CARLEN URIEL HIGGS,
AKA  Cardel Higgs,
AKA Cordell Dayes,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. 046-018-938)
Immigration Judge: Hon. Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2011
Before:  FUENTES, FISHER, and NYGAARD, *Circuit
Judges*

(Opinion filed August 25, 2011)

Thomas S. Jones, Esq.
Ryan M. Christian, Esq.
Alison M. Kilmartin, Esq.
Jones Day
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
          *Counsel for Petitioner*

Kate Balaban, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
          *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

Fuentes, *Circuit Judge*.

Carlen Higgs is the subject of a final order of removal from the United States issued by an Immigration Judge. Higgs filed a notice of appeal with the Board of Immigration Appeals ("BIA" or "Board") incorrectly identifying the appeal as one from an interlocutory ruling, rather than from a final order of removal. As a result, the Board dismissed Higgs's appeal as moot. Higgs filed the instant petition for review, challenging the Board's dismissal of his notice of appeal, the merits of the IJ's decision, and the enforceability of the order of removal.

For the reasons below, we conclude the Board's order is a "final order" within the meaning of 8 U.S.C. § 1252(a)(1) and that the Board erred by failing to liberally construe Higgs's petition for review. We will therefore grant Higgs's petition for review and remand to the BIA for further proceedings.

## I.

Carlen Higgs was born in the Bahamas in 1981 and in 1999 was lawfully admitted into the United States as a permanent resident. In 2005, Higgs was charged with possession of and intent to deliver marijuana, in violation of Pennsylvania law 35 Pa. Con. Stat. § 780-113(a)(30), and knowing and intentional possession of a controlled substance, in violation of 35 Pa. Con. Stat. § 780-113(a)(16). Three years later, the Government sought to remove Higgs under two provisions of the Immigration and Naturalization Act ("INA"). Under the INA, the Government "has the burden of establishing by clear and convincing evidence that . . . the alien is deportable." 8 U.S.C. § 1229a(c)(3)(A). The Government also sought removal pursuant to INA § 237(a)(2)(B)(i) which states:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State [or] the United States . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

3

8 U.S.C. § 1227(a)(2)(B)(i). In addition, the Government also invoked INA § 237(a)(2)(A)(iii), which authorizes removal of "[a]ny alien . . . convicted of an aggravated felony." 8 U.S.C. § 1227(a)(2)(A)(iii).

Represented by counsel, Higgs contested his removal on the ground that his prior convictions did not satisfy either provision. The Immigration Judge ("IJ") agreed, finding that Higgs sustained only a conviction for possession of marijuana and thus was not removable under INA § 237(a)(2)(A)(iii). After examining the state trial testimony, the IJ also found that Higgs was not removable under subsection (B)(i) because he possessed less than 30 grams of marijuana. On November 13, 2008, the IJ issued an order terminating the removal proceedings against Higgs.

The Government moved for reconsideration, and on November 24, 2008 the IJ granted the motion. In so ruling, the IJ explained that he had misunderstood the arresting officer's trial testimony, and that in fact, he testified that Higgs was arrested "with 38 bags of marijuana containing between .83 grams and 2 grams." A.R. 114.[1] Therefore, Higgs was removable under INA § 237(a)(2)(B)(i). Higgs then moved for reconsideration, arguing that the trial testimony was "vague and confusing" and did not "establish the exact amount of marijuana." A.R. at 79.

On February 4, 2009, the IJ issued a third order, described as an "interlocutory ruling," noting the uncertainty regarding the weight of the marijuana attributable to Higgs.

---

[1] "A.R" refers to the administrative record in this case.

4

Based on this uncertainty, the IJ ordered the Government "to obtain a copy of the property receipt" that itemized the seized marijuana, in the hopes that the receipt would conclusively prove the amount of marijuana at issue. A.R. at 80. The Government submitted the receipt, and on March 19, 2009, the IJ issued a fourth order, styled as an "Interlocutory Ruling on Motion," finding in the Government's favor. The IJ explained that:

> The trial transcript was certainly not the modicum of clarity. A review of the chemistry report verifies the substance confiscated from [Higgs] as marijuana, but only verified a total amount of 15.77 grams of marijuana from five (5) separate baggies out of a total of 38 baggies found on [Higgs's] person.
> . . .
> [T]he court is constrained to concur with government counsel that there was no need for the laboratory to perform an analysis on all of the baggies once the marijuana was confirmed. . . . [O]ne may reasonably presume that the remainder of the baggies which were not tested by the laboratory also contained marijuana. That is, it stretches credulity to believe that only the 5 baggies chosen for random testing contained marijuana and the remainder might not have.

A.R. at 61.

Thus the IJ concluded that Higgs possessed over 30 grams of marijuana at the time of his arrest. Following this

fourth ruling, the IJ issued a Final Order of Removal on May 21, 2009. This fifth, and last, order was purely administrative in nature and did not contain any reasoning or further explanation of the IJ's decision. It also noted that Higgs was reserving his right to appeal, and that his notice of appeal was due by June 22, 2009.

On May 26, 2009, proceeding *pro se*,[2] Higgs filed a Notice of Appeal and a Motion for Emergency Stay of Removal. In the section of the notice asking for the date of the "decision in a merits proceeding" being appealed, Higgs wrote "March-19-2009." A.R. at 6. Higgs also identified three reasons for his appeal: (1) the IJ's erroneous factual determination that Higgs possessed over 30 grams of marijuana, thus making him eligible for removal under INA § 237(a)(2)(B)(i); (2) the need for clarification of the Government's burden under the "clear and convincing evidence" standard; and, relatedly, (3) clarification on the relationship between the government's burden of proof, the rule of lenity and the rule "granting presumption to [a]liens." A.R. at 7.

Higgs's first notice of appeal was rejected by the BIA as non-compliant because the form lacked the necessary first page. Higgs re-submitted his notice of appeal, but that appeal too was dismissed. In its ruling—issued July 2, 2009—the BIA determined that, because Higgs's Notice of Appeal identified the IJ's March 19, 2009 interlocutory ruling as the subject of its appeal, the petitioner had "filed an interlocutory appeal." Noting that the basis for the interlocutory appeal had

---

[2] On May 21, 2009, Higgs's counsel successfully moved for permission to withdraw his representation.

6

been superceded by a final order of removal, the Board found Higgs's "interlocutory appeal [to be] moot" and dismissed it. A.R. at 2.

Higgs timely filed this petition for review. He also sought a stay of the removal proceedings, which this Court granted. In this petition for review, Higgs argues that the BIA erred in failing to construe his notice of appeal liberally. As to the merits of his removal, Higgs first submits that the IJ erred in finding that there was clear and convincing evidence that he possessed more than 30 grams of marijuana and was therefore ineligible for removal pursuant to INA § 237(a)(2)(B)(i). Next, Higgs contends that the order removing him to the Bahamas cannot be enforced because, by operation of law, he is not a Bahamian citizen.[3]

---

[3] At the time he was born, Higgs's parents were not married. His mother was a Jamaican citizen and his father a citizen of the Bahamas. Higgs wrote to the Embassy of the Commonwealth of the Bahamas inquiring about his citizenship status on July 22, 2009. The Consul responded on July 29, 2009, informing him that:

> Under the constitution of the Bahamas, persons born after 10 July, 1973 in the Bahamas to a non-Bahamian single mother, may apply for Bahamian citizenship at the age of 18 and before their 19th birthday. Until such time as they apply for and are granted citizenship, such persons are deemed to have the nationality of their mother.

**II.**

The Government raises two challenges to our jurisdiction in this case, which we review de novo. *Hoxha v. Holder*, 559 F.3d 157, 159 (3d Cir. 2009) (citing *Singh v. Ashcroft,* 383 F.3d 144, 151 (3d Cir. 2004)). In its motion to dismiss, the Government maintains that we lack jurisdiction over this petition because the BIA's order of dismissal is not a "final order" within Section 1252(a)(1) because it "did not adjudicate [Higgs's] removability" and did not "affirm the . . . May 21, 2009 decision, which was the final order of removal in the instant case." Gov't Mot. Dismiss at 4. In addition, the Government contends that we lack jurisdiction because Higgs has not exhausted his administrative remedies. We disagree.

Our jurisdiction to review a final order of removal is set forth in 8 U.S.C. § 1252(a)(1). Under that provision, we may review only "a *final order* of removal." *Id.* (emphasis added); *see also Khouzam v. Att'y Gen.*, 549 F.3d 235, 247 (3d Cir. 2008). We have taken a broad view of what constitutes a "final order of removal" under Section 1252. In *Yusupov v. Attorney General*, we stated our "agree[ment] with" the decisions of "several of our sister circuit courts of appeals . . . conclud[ing] that an order is final for jurisdictional purposes when a removability determination has been made that is no longer appealable to the BIA,

---

> Since you did not apply for citizenship under the terms mentioned, you are not a Bahamian citizen . . . .

Pet. Ex. A.

regardless [of] whether a formal order of removal has been entered." 518 F.3d 185, 195 (3d Cir. 2008); *see also Shehu v. Att'y Gen.*, 482 F.3d 652, 656 (3d Cir. 2007) ("denial of a . . . petition for asylum, withholding of removal, and relief under the [Convention Against Torture] constitutes 'a final order of removal' within the meaning of [section 1252], [because] the alien is entitled to no further process before deportation").

In *Khouzam*, we found an agency action that made the deportation of an alien a certainty constituted a final order of removal. 549 F.3d at 247. In that case, following a ruling by the Second Circuit granting the petitioner a "deferral of removal," the Department of Homeland Security ("DHS") "decided to terminate the deferral of removal." *Id.* As a result, the petitioner became "eligible for, and apparently subject to, imminent removal to Egypt." *Id.* Applying the "common sense application of the term's plain meaning," we found that DHS's decision was appealable because the petitioner was arrested and detained and "was going to be removed, and that was final." *Id.* at 248-49.

Therefore, the Government's argument that only an order affirming the IJ or adjudicating Higgs's removal is a "final order of removal" under Section 1252 is not supported by our case law. In this case, the IJ came to the conclusion that Higgs was deportable under INA § 237(a)(2)(B)(i) because he possessed more than 30 grams of marijuana. The IJ then issued a separate, final order of removal. The BIA never reviewed that order, having concluded that Higgs was appealing from a different order. Therefore, the IJ's final order of removal still stands, and the Board's July 2 order which mooted Higgs's appeal has the same effect as an order of removal.

9

There is also little doubt that the BIA's July 2 order is "final." The time for Higgs to remedy the error and properly appeal from the fifth, and "dispositive," order has passed. As a result, Higgs has no other administrative recourse to challenge his removability and is "entitled to no further process before deportation." [4] *Shehu*, 482 F.3d at 656. The short of it is that "[Higgs] [i]s going to be removed, and that [i]s final." *Khouzam*, 549 F.3d at 248.

The Government's second argument—that we lack jurisdiction because Higgs has failed to exhaust his administrative remedies—is also unavailing. To the extent the Government's position is premised on the contention that, because Higgs appealed only the interlocutory order and not the final order of removal, he did not exhaust his administrative remedies, this argument fails because, as we conclude below, the BIA erred in its reading of Higgs's notice of appeal. Moreover, Higgs's notice of appeal—which unequivocally stated the reasons for his appeal, including the factual and legal errors committed by the BIA—clearly complied with the principle that a petitioner has satisfied his administrative remedies if he made "some effort, however insufficient, to place the Board on notice of a straightforward issue being raised on appeal." *Lin v. Att'y Gen.*, 543 F.3d

---

[4] Higgs states in his brief that "by the time the BIA dismissed his [Notice of] Appeal, the time to re-file an appeal of [the final order of removal] had been expired for eleven days." Pet. Br. at 21. Therefore he has "no further means of administrative redress." Pet. Br. at 21. The Government does not contend otherwise.

10

114, 120 (3d Cir. 2008) (citing *Joseph v. Att'y Gen.,* 465 F.3d 123, 126 (3d Cir. 2006)).[5]

For these reasons, we conclude that we have jurisdiction over Higgs's petition for review under 8 U.S.C. § 1252.

## III.

We now turn to the heart of Higgs's claim on appeal, that the BIA erred in failing to construe his notice of appeal as seeking review of the IJ's final order of removal. The Government contends that the Board had no obligation to liberally construe Higgs's notice of appeal and thus that his appeal was properly dismissed.

## A.

In failing to afford Higgs a liberal construction of his notice of appeal, the BIA erred.[6] The obligation to liberally

---

[5] The Government also argues that the claim that Higgs is not a Bahamanian citizen is unexhausted because it was never presented to the IJ or to the BIA at all. Because we decline to reach the merits of this claim, the Board will have an opportunity to consider it for the first time on remand, thus allowing Higgs to properly exhaust this claim. We note, however, that Higgs only learned that he was not a Bahamian citizen after he had filed his notice, and thus, he was unable to raise that issue in his notice of appeal.

[6] Whether the Board applied the wrong standard in construing petitioner's notice of appeal is a question of law that we

11

construe a *pro se* litigant's pleadings is well-established. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 n.1 (3d Cir. 2009) ("[W]e remain mindful of our obligation to construe a *pro se* litigant's pleadings liberally.") (citing *Haines*, 404 U.S. at 520-21). This Court's jurisprudence has avoided formalism "in favor of a contextual approach that construes appeal notices liberally, especially in cases that, like this one, involve *pro se* appellants." *Gov't of Virgin Islands v. Mills*, 634 F.3d 746, 754 (3d Cir. 2011); *see also Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993) (noting that "we have traditionally given *pro se* litigants greater leeway where they have not followed the technical rules of pleading and procedure"). Our policy of liberally construing *pro se* submissions is "driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

In support for its argument that the BIA does not have an obligation to liberally construe *pro se* petitioners' notices of appeal, the Government directs us to the practical obstacles of doing so. The Government maintains that it is "unreasonable" to expect the Board to "read between the lines" of a notice of appeal, given the number of cases the Board reviews. Gov't Br. 13. In addition, the Government

review de novo. *Alaka v. Att'y Gen.*, 456 F.3d 88, 94 n.8 (3d Cir. 2006).

argues that because Higgs had a right to file an interlocutory appeal with the Board, "there was no reason for the Board to have known or surmised that the Petitioner intended to do something" else—that is, appeal the final order rather than the interlocutory order. Gov't Br. 12-13.

Neither of these arguments is persuasive. We have never held that, because it is difficult to interpret a *pro se* litigant's pleadings, it is not necessary to do so. Rather, when presented with a *pro se* litigant, we "have a special obligation to construe his complaint liberally." *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999) (quoting *Zilich v. Lucht,* 981 F.2d 694, 694 (3d Cir. 1992)). The Government's argument runs counter to the principles underpinning the policy of liberally construing *pro se* admissions. There is no question that *pro se* pleadings present particular challenges. *See* Jonathan D. Rosenbloom, *Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York*, 30 Fordham Urb. L. J. 305, 308 (2002) ("Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making. This task is particularly difficult because the submission may be rambling and illogical, if not completely illegible.").

These difficulties are compounded in the immigration system. *Pro se* pleadings are often submitted by individuals with limited skills and technical expertise in the law. *See* Lurana S. Snow, *Prisoners in the Federal Courts*, 9 St. Thomas L. Rev. 295, 301 (1997) (noting that "[m]any [*pro se* litigants are] illiterate, most are unschooled in the law, and some are in need of mental health counseling") (quoting

13

conference members at Judicial Conference of the U.S., Long Range Plan for the Federal Courts 65 (1995)). In immigration cases, *pro se* pleadings are often written by individuals with limited fluency in English. *See* Robert A. Katzmann, *The Legal Profession and the Unmet Needs of the Immigrant Poor*, 21 Geo. J. Legal Ethics 3, 9-10 (2008) ("An immigrant often has limited fluency with the English language . . . . An immigrant who appears *pro se* or does not have the benefit of adequate counsel will be at a disadvantage in such proceedings."). Moreover, the law itself is complicated and difficult to navigate. *See Baltazar-Alcazar v. I.N.S.*, 386 F.3d 940, 948 (9th Cir. 2004) ("With only a small degree of hyperbole, the immigration laws have been termed second only to the Internal Revenue Code in complexity. A lawyer is often the only person who could thread the labyrinth."); *see also Dia v. Ashcroft*, 353 F.3d 228, 277 (3d Cir. 2003) ("[C]ross-cultural misunderstandings about the veracity of petitioners' testimony can be exacerbated by difficulty understanding the procedure and structure of immigration proceedings.").

But if anything, the intricacy of this legal system accentuates the need to liberally construe *pro se* submissions or immigration petitioners. Like other administrative systems, the immigration system "must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 403 (2008). The obligation to construe these pleadings liberally—no matter how difficult the "practical reality of administrative practice"—must be taken seriously.

**B.**

14

Had the Board applied this principle to Higgs's notice of appeal, several aspects of the notice would have revealed that Higgs was in fact seeking review of the May 21 final order of removal.

First, although Higgs wrote in his notice of appeal that he was appealing the IJ's "March-19-2009" decision, his statement of the reasons for the appeal made it clear that what he wanted was for the BIA to review the determination that he was removable. Higgs explained that the reasons for his appeal were, *inter alia*, (1) "the need to review a clearly erroneous factual determination . . . where [Higgs] . . . did not possess over 30 grams[,] which [INA § 237(a)(2)(B)(i)] clearly exclude[s] for deportation purposes," and (2) whether the Government met its burden of proof by proving the ground for removal by clear and convincing evidence. A. R. 7. In addition, the addendum Higgs attached stated that he "[wa]s not deportable under section 237(a)(2)(b)(i) of the Immigration and [N]ationality [A]ct, and has not committed [a] deportable offense because the respondent State conviction presentence report does not verify marijuana to weigh over 30 grams." A.R. at 11. Thus, although Higgs identified the March 19 interlocutory ruling as the subject of his notice of appeal, the substance of his submission revealed that Higgs was challenging the IJ's determination that he was removable.

Second, the timing of Higgs's filing of his notice of appeal also demonstrates that Higgs sought review of the May 21 final order of removal. Under 8 C.F.R. § 1003.3(a)(2), an appeal must be filed with the BIA "within 30 days of the service of the decision being appealed." Higgs's notice of

15

appeal was therefore untimely as to the March 19 decision, but it was timely as to the *May 21* final order of removal, and was filed only five days after the final order of removal was issued. The temporal proximity between Higgs's appeal and the final order of removal issued against him, in light of the notice's untimeliness as to the fourth interlocutory ruling, should have alerted the BIA to the fact that Higgs sought an appeal from that actual removal order, and not the interlocutory ruling issued sixty-eight days earlier. *Cf. Mills*, 634 F.3d at 753 (noting that because defendant had already "completed service of the sentence he received" on an earlier assault conviction and "had just been convicted in [a new] murder case" offense . . . the government should have known that [the defendant] was appealing the murder conviction, not the dusty old assault conviction").

Third, given the BIA's own policy disfavoring interlocutory appeals, it would have made sense for the BIA to construe Higgs's notice of appeal as challenging the final order of removal. The BIA's Practice Manual states: "The Board does not normally entertain interlocutory appeals and generally limits interlocutory appeals to instances involving either important jurisdictional questions regarding the administration of the immigration laws or recurring questions in the handling of cases by Immigration Judges." BIA Practice Manual § 4.14(c). Therefore, it would seem anomalous for the BIA to designate Higgs's notice of appeal as an interlocutory appeal and rule that it is moot, particularly since Higgs did not write "interlocutory appeal" on his notice of appeal, as the Practice Manual commands. BIA Practice Manual § 4.14(d) ("Next to the words 'What decision are you appealing?' in box 5, type or write in the words 'INTERLOCUTORY APPEAL.'").

Finally, given the nature of the two orders at issue, it is understandable that Higgs erroneously identified the earlier ruling as the subject of his appeal. Only the March 19 interlocutory ruling contained an explanation of the IJ's determination that Higgs was removable. That order concluded that "the government ha[d] met its burden of proof by clear and convincing evidence" of a violation under INA § 237(a)(2)(B)(i). The May 21 final order of removal, on the other hand, is a one-page administrative order that contains no explanation of the IJ's decision. Thus, we find it understandable that a layperson such as Higgs, who was challenging the *merits* of the IJ's determination that the evidence showed that he possessed more than 30 grams of marijuana, would identify the order setting forth that determination, rather than the administrative order enforcing that decision.

## IV.

In conclusion, while the circumstances of Higgs's notice of appeal demonstrate that he intended to appeal from the final order of removal issued on May 21, 2009, the Board never reached the merits of his appeal. Therefore, consistent with our policy that an "agency is given an opportunity to resolve issues raised before it prior to any judicial intervention," *Hoxha*, 559 F.3d at 163, we will remand this case to the BIA for further proceedings to consider Higgs's remaining two claims, that the IJ erred in finding that there was clear and convincing evidence that he possessed more than 30 grams of marijuana and that the final order of removal is unenforceable because of his citizenship status.

17