MEMORANDUM *
California state prisoner Jovan’z Smith (Smith) appeals the district court’s denial of his habeas corpus petition challenging his conviction for assault on a child causing death. Smith contends that the California trial court violated his constitutional rights by admitting his confession into evidence even though it was obtained during a lengthy, station-house interrogation during which he was not timely advised of his Miranda rights. The district court found this to be a close case, but denied Smith’s petition and granted a certifícate of ap-pealability. Reviewing the district court’s denial of habeas relief de novo, and bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we affirm.
1. AEDPA authorizes the grant of a state prisoner’s petition for a writ of habe-as corpus when the relevant state court decision was (1) “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court” -or (2) “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d). Under AEDPA, the Court must “look to the last reasoned state court adjudication on the merits of [Smith’s] Miranda claim[s], which was the decision of the California Court of Appeal.... ” Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013).
The parties, the state appellate court, and the district court identify the pivotal issue in this case to be whether Smith was “in custody” when he-first made incriminating statements to the police. See United States v. Kim, 292 F.3d 969, 973 (9th Cir.2002) (“An officer’s obligation to give a suspect Miranda warnings before interrogation extends only to those instances where the individual is ‘in custody.’” (internal citation omitted)). In determining whether a suspect was in custody, “[t]wo discrete inquiries are essential.... ” Thompson v. Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). First, a court must determine “what [objective] circumstances surroundfed] the interrogation. ...” Id.[1] Second, a court must decide whether “a reasonable person [in those objective circumstances would] have felt he or she was not at liberty to terminate the interrogation and leave.” Id.; see also Howes v. Fields,—U.S.-, 132 S.Ct. 1181, 1189, 182 L.Ed.2d 17 (2012) (setting forth a non-exhaustive list of factors that are pertinent to the determination whether a reasonable person would have believed he could freely walk away from the interrogators); Kim, 292 F.3d at 974 (same).
2. Applying the custody test here, we find that a fairminded jurist could conclude, as did the three judges on the state appellate court, that a reasonable person in Smith’s circumstances would have believed that he or she was free to go. It is true that a number of circumstances weigh in favor of the view that the interrogation became custodial before Smith first confessed. Such circumstances include, but *420 are not limited to, how Smith was summoned and brought, from school to the police station, aspects of the interview’s physical surroundings, the confiscation of Smith’s property, the tag-team interrogation tactics employed, the detectives’ at times accusatory tone, the duration of the interview, some statements made by the officers and the child’s grandmother during the interview, and the fact that Smith was not released at the end of the questioning.
But numerous other circumstances support the view that the interrogation could fairly be deemed investigative rather than custodial. Smith was never handcuffed, the door to the interview room was unlocked and was sometimes left open, the detectives were dressed in plain clothes, the detectives were courteous and relaxed for most of the interview, Smith was given some breaks from questioning, and Smith signed forms consenting to a lie detector test and retrieval of items from his room. Most significantly, as the state appellate court emphasized, the police advised Smith that he was not under arrest three times and that he was free to leave twice. The Supreme Court and this Court have consistently recognized that such advisements weigh strongly in favor of the view that an interviewee was not in custody. California v. Beheler, 468 U.S. 1121, 1122, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam); Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam); United States v. Cranford, 372 F.3d 1048, 1059-60 (9th Cir.2004) (en banc).
While the state appellate court incorrectly stated that Smith was “told three times that he was not under arrest and that he was free to go,” the misstatement appears to have been inadvertent and not to have affected its analysis. In fact, the state appellate court directly confronted the third advisement’s ambiguity, and thus must have known that Smith was told that he was “not under arrest,” not that he was “free to go.” The reasonableness of the state appellate court’s view that the third advisement’s ambiguity did not render the interrogation custodial is reinforced by statements that Detective Pucci made at the conclusion of the lie detector test. Detective Pucci shook Smith’s hand and stated, “[i]f I don’t get a chance to see you again, good luck to you, and I hope everything works out for you.” He then handed Smith his card and said “[y]ou got any questions, concerns about anything, that’s my desk number there.” A reasonable person in Smith’s circumstances would view this interaction as an indication that he or she remained free to leave.
It is concerning that the state appellate court did not address Detective Pucci’s comment that Smith could not “leave the room lying bro.” As this Court has noted, “[a] decision on which turns whether a teenager will spend the rest of his days behind bars merits closer judicial attention from the state courts.” Taylor v. Maddox, 366 F.3d 992, 1007 (9th Cir.2004). But, viewed in context, the statement “[y]ou can’t leave this room lying bro” could be viewed as an appeal to the importance of truth rather than interpreted as a literal statement about whether Smith was free to leave.
Looking to the totality of circumstances, we conclude that the state appellate court’s decision that Smith was not in custody when he first confessed was not objectively unreasonable. Accordingly, we must deny habeas relief. As the Supreme Court has held on multiple occasions, “even a strong case for relief does not mean the state court’s contrary conclusion was unreasonable.” Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); see also Lockyer v. Andrade, 538 U.S. 63, *421 75, 128 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (reversing the Ninth Circuit for “failing] to give proper deference to state courts by conflating error (even clear error) with unreasonableness”). Indeed, state courts are given even “more leeway” in cases like this one, where the rule applied is general in nature, requiring a case-by-case assessment based on the totality of circumstances. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).
3. The state appellate court’s failure to identify Smith’s youth as a relevant factor in the custody test does not render its decision contrary to clearly established Supreme Court precedent.[2] It was not until the Supreme Court decided J.D.B. v. North Carolina,—U.S.-, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011), on June 16, 2011, several months after Smith’s appeal became final, that the Supreme Court squarely held that a suspect’s age properly informs the Miranda custody analysis. J.D.B. was thus not clearly established law at the time of the state appellate court’s decision and may not provide a basis for granting habeas relief.
4. The district court also certified the following issue: “Whether the police may use the ‘you’re not under arrest’ strategy to avoid reading petitioner his rights while, in the meantime, resorting to coercive strategies condemned by Miranda to extract a confession.” On appeal, Smith frames this issue as whether the state trial court should have suppressed Smith’s confession because it was obtained during a deliberate two-step interrogation in violation of the rule set forth in Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) (plurality opinion). 'Smith’s argument fails because Seibert does not apply where, as here, the suspect was not in custody during the first stage of the interrogation. See United States v. Barnes, 713 F.3d 1200, 1205-06 (9th Cir.2013) (per curiam). We note that the Supreme Court has not categorically prohibited the deliberate use of the “ ‘you’re not under arrest’ strategy.” Rather, the Supreme Court endorsed this strategy in Mathiason, 429 U.S. at 495, 97 S.Ct. 711, and Beheler, 463 U.S. at 1122, 103 S.Ct. 3517. This is not to say that an interrogation begun with a so-called “Be-heler advisement” cannot become custodial as that interrogation drags on and coercive circumstances accumulate. But, on the facts presented, the state appellate court did not unreasonably conclude that the custodial rubicon had not been crossed by the time Smith first confessed, and thus the prophylactic procedural measures adopted by the Supreme Court in Miranda had not been triggered.
For these reasons, the district court’s denial of habeas relief is AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The circumstances surrounding Smith’s interrogation are detailed in the magistrate judge's report and recommendation. While not repeated here, the panel's decision is based on the totality of circumstances, including as shown by the video footage of the interrogation.

. Smith was sixteen years old at the time of the interrogation.