# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUSAN PAITSEL | : | |
| | : | |
| Plaintiff, | : | K15C-02-030 JJC |
| | : | In and For Kent County |
| v. | : | |
| | : | |
| STATE OF DELAWARE, | : | |
| DEPARTMENT OF LABOR, and | : | |
| DEPARTMENT OF | : | |
| TRANSPORTATION | : | |
| | : | |
| Defendants. | : | |

Submitted: February 12, 2016
Decided: April 7, 2016

## OPINION

*Upon Defendants' Converted Motion for Summary Judgment*
*GRANTED in part and DENIED in part*

Andre M. Beauregard, Esquire, of Brown, Shiels & Beauregard, LLC, Dover, Delaware, Attorney for Plaintiff.

Oliver J. Cleary, Esquire, and Joseph C. Handlon, Esquire Department of Justice, Wilmington, Delaware, Attorney for Defendants.

Clark, J.

# I. INTRODUCTION

The Defendants State of Delaware, Department of Labor, and Department of Transportation (hereinafter referred to collectively as "the State") filed a Superior Court Civil Rule 12(b)(6) motion to dismiss Plaintiff Susan Paitsel's ("Paitsel's") amended complaint. Paitsel alleges, *inter alia*, employment discrimination against the Delaware Department of Labor (hereinafter "DOL") and the Delaware Department of Transportation (hereinafter "DelDOT"). The Court, after providing notice to the parties, converted this motion to dismiss to a motion for summary judgment because both parties supplemented the briefing with materials outside the pleadings.

DOL was both Paitsel's employer and the agency who accepted her charge of discrimination pursuant to DOL's work sharing agreement with the Equal Employment Opportunity Commission (hereinafter "EEOC"). DOL seeks dismissal of Paitsel's claim for an untimely filed charge. Paitsel asserts in part that DOL caused the delay because of an alleged conflict of interest in being both her employer and the charge processing entity. Under the circumstances of this case, there is a genuine issue of material fact regarding whether Paitsel's claim against DOL is time barred.

Paitsel also separately sued DelDOT but named that agency in the suit well after expiration of the statute of limitations. She claims that a timely filed suit against either the State of Delaware or DOL permits her claim against DelDOT to relate back to the initial timely filed suit. In this instance, it does not.

Finally, Paitsel's federal claims are barred by the sovereign immunity granted by the Eleventh Amendment to the United States Constitution. Accordingly, for the following reasons, summary judgment on behalf of the State of Delaware Defendants is **GRANTED** in part and **DENIED** in part.

## II. PROCEDURAL AND FACTUAL BACKGROUND

On February 27, 2015, Paitsel filed a complaint in this Court alleging employment disability discrimination on both federal and state law grounds. The complaint initially named DOL and one of its employees, Julianne Watkins, in her official capacity. DOL and Watkins filed an answer and motion for judgment on the pleadings on May 29, 2015. Thereafter, Paitsel filed an amended complaint on September 14, 2015, adding DelDOT as a defendant, together with allegations of violations of the Americans with Disabilities Act[1], and a claim alleging breach of the covenant of good faith and fair dealing. Furthermore, Paitsel's amended complaint removed Julianne Watkins as a defendant and abandoned a 42 U.S.C. § 1983 claim.

The counts now included within Paitsel's amended complaint include a disability discrimination claim against DOL pursuant to the Delaware Persons With Disabilities Employment Protection Act ("PWDEPA")[2] and the Americans with Disabilities Act ("ADA")[3]. Furthermore, the amended complaint now separately includes claims of retaliation under the PWDEPA and the ADA targeted at DelDOT for a separate incident. Finally, Paitsel included a count alleging a breach of good faith and fair dealing against all Defendants. In Paitsel's response opposing the motion, however, she voluntarily withdrew this common law claim.

On November 2, 2015, the State moved to dismiss the amended complaint on Rule 12(b)(6) grounds. Both parties submitted documents supplementing their positions, including an affidavit signed by Paitsel and a witness's statement. Also, the

---

[1] 42 U.S.C.A. § 12112 *et seq*.

[2] 19 *Del.C.* § 720.

[3] 42 U.S.C.A. § 12112 *et. seq.*

parties provided a number of documents generated throughout the administrative process. After reviewing the submissions, the Court converted the motion to dismiss into a motion for summary judgment pursuant to Delaware Superior Court Civil Rule 12(b). The parties were then permitted thirty additional days to provide additional material made pertinent to the motion by Superior Court Civil Rule 56. The discussion of the evidence that follows reflects the evidence of record viewed in the light most favorable to Paitsel, as the non-movant.

Paitsel was a contract worker for Goodwill Staffing Services ("GSS") and was assigned at the DOL's Division of Unemployment Insurance as a Claims Representative from August 25, 2009 until July 1, 2011, when DOL terminated her contract. GSS is an organization that assists individuals with disabilities in finding suitable employment and places them in various contract positions with State agencies.

Paitsel's conduct at issue at DOL centers on three work days. On June 29, 2011, Paitsel called her supervisor at the DOL stating that she would be late to work due to an emergency with her stepdaughter. At 10:45 that morning, Paitsel called a second time to notify her supervisor that she would not be going to work that day.

On June 30, 2011, Paitsel arrived at work on time, but failed to notify her supervisor when she took a forty minute break instead of the allotted fifteen minutes. Furthermore, the State alleges DOL staff complained to a supervisor that Paitsel's speech was slurred and that she could hardly stand or walk. As a result, she was told to go home.

The next day, on July 1, 2011, Paitsel appeared at work in the same condition, prompting a meeting with her supervisor, Julianne Watkins. At that meeting, Paitsel explained that she was suffering from adverse effects of her new medication, Xanax, which was prescribed to her by her doctor on June 28, 2011. Sarah Callaway, a co-

4

worker of Paitsel's, corroborated Paitsel's position regarding the prescription medicine. Paitsel also provided documentation of this prescription. Nevertheless, DOL terminated her employment.[4]

Paitsel asserts that she suffers from general anxiety disorder and bipolar disorder which required her to take prescription medication. Paitsel further alleges that the side effects of this medicine involved slurring words, slow speech, and difficulty articulating words properly. Paitsel, immediately following her termination, voluntarily submitted to a drug and breathalyzer test at Bayhealth's walk-in clinic. The results of the tests were negative for alcohol. Paitsel then contacted the GSS coordinator who administered an independent drug test to confirm the results. Paitsel alleges that when confronted with these facts, DOL refused to engage in an interactive discussion regarding a reasonable accommodation for her disability. Paitsel alleges that she was wrongfully discharged as a result of her impairments.

Paitsel was later assigned by GSS to DelDOT on August 23, 2011. Her assignment there was terminated on September 19, 2011. The cited reason for her termination was her inability to complete assigned functions. However, Paitsel asserts that the reason for her termination at DelDOT was pretextual and DelDOT's true motivation was retaliatory in response to her complaint of discrimination at DOL based on the medication related matter from two months prior.

Paitsel states, by affidavit, that she presented her charges of discrimination to the DOL Office of Anti-Discrimination on October 28, 2011, and was told by a DOL employee that her charges would be filed in a timely fashion. The formal charges were

---

[4] As an actual employee of GSS, Paitsel was placed at first with DOL. Approximately two months later, GSS separately placed her with DelDOT. For purposes of this motion, the Court is assuming, as have the parties in the motion papers, that Paitsel was an employee of DOL and then DelDOT for purposes of the various discrimination claims.

not filed, however, until November 22, 2011, after the 120 day deadline set by 19 *Del.C.* § 712. The formal charge against DOL accordingly did not fall within the required time frame. Since DelDOT related allegations stemmed from September 19, 2011 conduct, the timing of the formal charges against DelDOT met the 120 day statutory deadline for that claim. Paitsel asserts that because DOL staff assured her that her charges would be filed in a timely fashion, she met the charge deadline as to DOL.

After she filed separate charges against each agency, the Equal Employment Opportunity Commission ("EEOC") separately investigated Paitsel's claims of discrimination against DelDOT and DOL. The EEOC issued a determination on September 19, 2013 that there was reasonable cause to believe that DOL discriminated against her based on her disability. However, the EEOC issued a no-cause finding and a Right to Sue Letter on November 21, 2013 regarding Paitsel's retaliation charge against DelDOT. The EEOC issued the separate Right to Sue Letter against DOL much later, on December 2, 2014. Paitsel filed a suit against DOL on February 26, 2015. However, she did not name DelDOT separately as a Defendant until September 14, 2015.[5]

## III. STANDARD OF REVIEW

When deciding a motion to dismiss under Superior Court Civil Rule 12(b)(6), all well-pleaded allegations in the complaint must be accepted as true.[6] The test for

---

[5] Paitsel did however reference DelDOT employee conduct in the original complaint. Also, although DelDOT was not named as a defendant in the original complaint, Paitsel included the formal charge against DelDOT as an exhibit to the original complaint.

[6] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

6

sufficiency is a broad one: the complaint will survive the motion to dismiss so long as "a plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[7] Stated differently, a complaint will not be dismissed unless it clearly lacks factual or legal merit.[8]

As also provided in Superior Court Rule 12(b), in a Rule 12(b)(6) motion, where "matters outside the pleadings are presented and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56." There are two exceptions to the prohibition against considering extrinsic material on a motion to dismiss: (1) where a document is integral to a Plaintiff's claim and is referred to in the complaint, or (2) where the document is relied upon for something other than the proof of its contents. [9]

Summary judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party, the moving party demonstrates that "there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[10] When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts to clarify the application of the law to the circumstances," summary judgment will not be appropriate.[11] However, when the facts

---

[7] *Id.* (citing *Klein v. Sunbeam Corp.*, 94 A.2d 385 (Del. 1952)).

[8] *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970).

[9] *Furman v. DOT*, 30 A.3d 771, 774 (Del. 2011) (citing *Vanderbilt Income and Growh v. Arvida/JBM Managers*, 691 A.2d 609, 613 (Del. 1996)).

[10] *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991) (citing *Benge v. Davis*, 553 A.2d 1180, 1182 (Del. 1989)); *see also* Del. Super. Ct. Civ. R. 56(c).

[11] *Ebersole v. Lowengrub,* 180 A.2d 467, 468-69 (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[12]

## IV. DISCUSSION

The State moves for dismissal of Paitsel's discrimination claims against DOL and DelDOT alleging that (1) the State claims against DOL are time barred because of a late filed administrative claim, (2) suit was not filed against DelDOT within the State statute of limitations, and (3) the State is immune from the Federal discrimination claims pursuant to the sovereign immunity granted by the Eleventh Amendment to the United States Constitution. Paitsel opposes the State's Motion for Summary Judgment by alleging that she presented her claims against DOL within the deadline, but an administrative error or purposeful delay by DOL prevented the proper filing of her claims. She also acknowledges that money damages against a state are not recoverable under the ADA, but claims she is nevertheless eligible for injunctive relief regarding her federal law claim. Paitsel also argues that DOL and DelDOT, as State agencies, should be treated as a single Defendant – the State – for purposes of notice and therefore the ninety day suit filing deadline against DelDOT was satisfied by her suit against DOL.

**A.    Because of the nature and extent of the materials both parties offered in support of their positions, the matter is converted to a summary judgment motion pursuant to Superior Court Rule 56.**

Paitsel supplemented the record with the following documents: her affidavit; the formal charge filed against DelDOT; documents submitted to the EEOC in furtherance

---

[12] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

of the investigation; a statement by Paitsel's co-worker Sarah Callaway; an emailed statement from Paul Beane, Paitsel's GSS manager; the Determination of Reasonable Cause from the EEOC regarding Paitsel's DOL charge; and, the Investigative Case Log for Paitsel's charge against DelDOT.   The State supplemented the record with its contract with GSS, its written response filed with the EEOC contesting the DOL charge, and the DOL charge.

Here, both parties supplemented the Rule 12(b)(6) record with documents outside the pleadings.  After reviewing the documents in the context of the pleadings, the Court converted the motion to one for summary judgment.  Neither of the exceptions to this Rule calling for conversion applied in the instant case.[13]  Namely, many of the documents were not integral to the pleadings and were not specifically incorporated into the complaint or answer.  Furthermore, they were not offered for some reason other than the proof of their respective contents.  The Court felt it appropriate to convert the motion and then gave the parties thirty additional days to supplement the record with additional information they believed to be pertinent. Neither party supplemented the record with additional evidence.

**B.** **The evidence of record does not support summary judgment regarding Paitsel's PWDEPA claim against DOL.**

The State argues that the PWDEPA claim against DOL should be dismissed because she filed the charge untimely.  The State emphasizes that the deadline to file a discrimination charge is within 120 days of the allegedly discriminatory act, but Paitsel's formal charge was belatedly  filed on the 144th day.   Paitsel argues that she

---

[13] See *Furman v. DOT*, 30 A.3d 771, 774 (Del. 2011) (articulating the exceptions discussed *infra.*).

9

presented her charge of discrimination to the DOL on the 119th day, within the deadline, and was assured that it would be filed in time. She asserts that the delay in filing is due to DOL and not herself. In this regard, she argues that this statutory claim deadline should be equitably estopped or tolled because the delay in filing was DOL's fault.

A charging party may file a civil action for discrimination in the Superior Court only after exhausting all administrative remedies and receiving a Delaware or Federal Right to Sue Notice.[14] Prior to the receipt of this notice, the administrative process requires that "[a]ny person claiming to be aggrieved . . . shall first file a charge of discrimination within 120 days of the alleged unlawful employment practice or its discovery, setting forth a concise statement of facts, in writing, verified and signed by the charging party."[15] Because time is a jurisdictional requirement, a defect created by an untimely filing cannot be excused unless it is attributable to an administrative error.[16] Furthermore, an untimely filing may be excused in certain circumstances where "the interest of justice would not be served by inaction."[17] Therefore, if a charge is untimely due to an administrative error that is the fault of DOL, this Court will still retain

---

[14] 19 *Del. C.* § 714(a).

[15] 19 *Del. C.* § 712(c)(1).

[16] *See Casteel v. State of Delaware*, 2016 WL 152966, at *1 (Del. Super. Jan. 8, 2016) (Slip Copy)(holding that untimely filing is a jurisdictional requirement that cannot be excused unless the delay in filing is attributable to court-related personnel); *see also Funk v. Unemployment Ins. Appeal Bd.*, 591 A.2d 222, 225 (Del. 1991) (holding that the ten day statutory period to file an unemployment appeal begins to run on the date of mailing unless the mailing fails to reach a party due to some mistake made by employees of DOL).

[17] *Lively v. Dover Wipes Co.*, 2003 WL 21213415, *1 (Del. Super. May 6, 2003) (holding that the UIAB may take jurisdiction of an untimely filed appeal if the lateness was tracked back to a administrative error or if it finds that the interest of justice would not be served by inaction).

jurisdiction over the claim.

Here, Paitsel asserts, via affidavit, that she presented her claim to the DOL on October 28, 2011 which was the 119th day and within the statutory charge deadline. Further, Paitsel states that she was assured that her charge would be filed in a timely manner. There has been no evidence offered by the State, via affidavit or otherwise, refuting the fact that Paitsel presented her charge on the 119th day. How the claim was "presented" however is not clear on the record. Accordingly, there is a genuine issue of material fact regarding whether an administrative error caused the delay in filing the formal charge.

Delaware's employment discrimination statute is nearly identical to the federal Title VII employment discrimination statute.[18] Because the statutory language is substantially similar to its Federal counterpart regarding unlawful employment practices, the Delaware Supreme Court has held that the tests and standards used for Title VII apply to Delaware statutory claims as well.[19] In other words, Delaware takes its interpretive lead regarding our State discrimination statutes from the Federal interpretations due to the similarity of the statutes.[20] For this reason, this Court will look to federal interpretations to substitute for a lack of state authority on this matter.

As noted above, Paitsel presented something pertaining to her DOL and DelDOT claims to DOL on the 119th day. An issue remains, however, as to the sufficiency of what Paitsel "presented" and whether that qualifies as a charge pursuant to the governing statute. The Supreme Court of the United States has held that a charge must

---

[18] *See Cannon v. State of Del.*, 523 F. Supp. 341, 344 (D. Del. 1981) ( holding that "Delaware State law prohibits employment discrimination in terms almost identical to Title VII itself").

[19] *Giles v. Family Court of Delaware*, 411 A.2d 599, 601-02 (Del. 1980).

[20] *Riner v. Nat'l Cash Register*, 434 A.2d 375, 376 (Del. 1981).

be reasonably construed as a request to take an action as well as contain, at a minimum, an allegation, and the name of the charged party.[21] When an individual files a charge of discrimination, they first complete an intake form or questionnaire.[22] While the intake questionnaire is not considered *per se* to be a charge, a court may treat it as a charge if it meets the minimum requirements set.[23] For instance, the United States District Court for the Western District of Pennsylvania found that an attorney's letter to the EEOC could constitute a charge because it contained the appropriate information and had a request for action.[24]

Various other District Courts in the Third Circuit have acknowledged that documents other than a formal charge may satisfy the "charge" requirement as long as they are verified.[25] In EEOC regulations, verified is defined as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury."[26] Federal District Courts have found that the use of an intake questionnaire is sufficient to constitute a charge and that later verification of a charge will relate back to the date of the

---

[21] *Hayes v. Delaware State University*, 726 F.Supp.2d 441, 451 (D. Del. 2010) (Citing *Fed. Express Corp. V. Holowecki*, 552 U.S. 389, 402 (2008)).

[22] *Id.*

[23] *Id.*

[24] *Steiner v. Prof'l Servs. Indus. Inc.*, 2009 WL 2950755, at *2 (W.D. Pa. Sept. 9, 2009).

[25] *Waites v. Kirkbride Center*, 2011 WL 2036689, at *5 (E.D. PA May 23, 2011).

[26] *Id.* at *4

questionnaire.[27] Even if a plaintiff's questionnaire contains specific language that the completion of the form does not constitute a charge, courts may still consider it sufficient as long as the form lists the name of the charged party, the allegation of discrimination, and can be considered as a request for action.[28]

Under Rule 56, when a non-movant is afforded the opportunity and does establish a genuine issue of material fact, ". . .the burden again shifts to the movant to demonstrate the absence of such disputes. . ."[29] Despite opportunity, the State has provided no contrary facts of record regarding this issue. Neither party submitted the questionnaire or attested to the fact that nothing was presented in writing on the 119th day. On the other hand, Paitsel's representation in her affidavit does not specify how she "presented" her claim. There is not sufficient evidence of record to resolve whether what she presented qualifies as a "charge."[30] Given Patisel's affirmative representation in her affidavit and the lack of contradictory facts submitted by the State, summary judgment as to Paitsel's PWDEPA claim against DOL must be denied.

---

[27] *Wood v. Kaplan Props*. 2009 WL 3230267, at *4 (D.N.J. Sept. 29, 2009); *Joseph v. Pennsylvania*, 2009 WL 1012464, at *1 (E.D. Pa. Apr. 15, 2009).

[28] *Hayes,* 726 F.Supp.2d at 452.

[29] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1287 (Del. 2007)

[30] Paitsel primarily asserts that DOL is estopped from using the charge deadline as a defense based on its failure to fully process the claim after it was "presented" on the 119th day. Equitable tolling applies in circumstances "where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his [or her] rights*." Miller v. Beneficial Manag. Corp*., 977 F.2d 834, 845 (3d.Cir. 1992). Here, there is the unusual situation involving an employer and a charge processing agency that are one and the same. Paitsel's affidavit establishes a factual issue regarding whether the requirements for equitable estoppel exist, as well whether an administrative error excused her missing of the charge deadline. At this stage of the proceedings, DOL has offered no other evidence of record about the exchange between Paitsel and DOL during this "presentation" of the claim or its surrounding circumstances. A further developed factual record at trial is appropriate regarding the estoppel defense to the timing requirement, as well as the issue regarding possible administrative error.

An issue of material fact also remains as to whether the presentation referred to by Paitsel in her affidavit satisfied the requirement for filing a charge pursuant to 19 *Del.C.* § 712.

The State also argues that since DOL has not promulgated regulations implementing an enforcement mechanism as required by 19 *Del.C.* § 722(4)c, enforcement is not available in this case against either agency. Section 722(4) of Title 19, Delaware Code provides that "[e]nforcement of [the PWDEPA] by persons qualifying for protection solely under this paragraph (4)c of this section shall be deferred until the issuance of the Secretary's final regulation." Neither party addressed this issue at length in the briefing.

Paitsel counters that her claim is made pursuant to a different paragraph, 19 *Del.C.* § 722(4)a, that is not impacted by that qualification. Namely, she alleges a documented impairment as opposed to being "regarded as having such impairment." The Court recognizes that the provision at issue is limited solely to paragraph (4) c of that section. Accordingly, as alleged, Plaintiff's allegedly documented disability would qualify for protection under the PWDEPA independent of whether DOL issued regulations regarding enforcement under paragraph (4)c.

Moreover, the State's position on this issue is contradicted by its assertion in its motion that the PWDEPA's provisions abrogate Paitsel's common law claim – here, the breach of the covenant of good faith and fair dealing. If the PWDEPA was inapplicable to Paitsel as the State alleges, Paitsel's common law claim would not be abrogated. The State apparently did not raise any such issue in the administrative process as evidenced by its response to Paitsel's charge of discrimination, included as an exhibit to the State's Opening Brief. It seems appropriate that if a Plaintiff must exhaust administrative remedies, the State, as the employer must also.

14

Finally, it would be inappropriate for the State to use this provision as a shield since it is charged with adopting such regulations. The General Assembly enacted this statute, which addresses needed regulations, on July 11, 1988 and it became effective 180 days thereafter.[31]   Accordingly, an agency's failure to enact enforcement related regulations for over twenty years, contrary to the General Assembly's direction, would not be appropriate. Reading such language to permit a defense to a PWDEPA claim would essentially allow an agency veto of a statute. This would be inconsistent with the prohibition against open ended delegation of legislative powers to an agency.[32] If final regulations have not yet been enacted, DOL in this instance would be in violation of the General Assembly's clear mandate that DOL "shall adopt such rules and regulations as may be necessary and proper to implement the policies of [the PWDEPA]."[33]   The parties cited no authority other than the statute's language in their briefing. If Paitsel's claim ultimately falls solely within the parameters of paragraph (4)c., of Section 722, of Title 19, a 1988 ostensible statutory "deferral" of enforcement is not available for DOL.

**C.     Paitsel's  PWDEPA action against DelDOT is time barred and summary judgment must be granted on behalf of DelDOT.**

Since the alleged conduct of DelDOT followed that of DOL, there is no dispute that a  sufficient charge was filed against DelDOT within the 120 days required by 19 *Del.C.* § 712. However, the State argues that the statute of limitations for bringing a

---

[31] 66 Del. Laws ch. 337 (1988).

[32]*See* Del.Const. art. II, § 1 (mandating that the "legislative power of this State shall be vested in a General Assembly...");

[33] 19 *Del. C.* § 728.

suit against DelDOT for an employment retaliation claim expired. Paitsel received her Right to Sue Letter as to DelDOT on November 21, 2013. The State, accordingly, asserts that because Paitsel failed to bring a law suit within 90 days of receiving the Right to Sue Letter, her State claim against DelDOT is time barred pursuant to 19 *Del. C.* § 714.

In this regard, the State argues that state agencies are not fungible and a claim against one that is time barred cannot automatically relate back to a claim against another agency for purposes of application of this shortened statute of limitations. Paitsel counters by asserting that the action against DelDOT is directly connected to the action against DOL. Paitsel argues that she filed both claims with DOL on the same day and they were both investigated together by the EEOC. She also argues that the claims are interrelated to such a degree that the action against DelDOT should relate back to the action against DOL.

When receiving a Right to Sue Notice authorizing the charging party to file a civil action for a claim, the action must be initiated within 90 days of its receipt.[34] The notices themselves reference the ninety day deadline and are directed to the claimant, such as Paitsel. The controlling statue directs that if the charging party's discrimination cause of action is prosecuted in the federal forum (i.e. the EEOC), then the Federal Right to Sue Notice is operative.[35] A Federal Right to Sue Notice against DelDOT was issued on November 21, 2013. Paitsel did not sue DelDOT until September 14, 2015, well past the 90 day statute of limitations set forth in 19 *Del. C.* § 714(b). In contrast, a **separate finding** by the EEOC, finding reasonable cause to believe DOL

---

[34] 19 *Del. C.* § 714(b).

[35] *Id.*

16

discriminated against Paitsel was issued on September 9, 2013. A **separate** Right to Sue Notice regarding Paitsel's claims against DOL was not issued until December 2, 2014. Paitsel then filed a timely Superior Court complaint against DOL within the required 90 days. Paitsel did not name DelDOT in the suit by an amended complaint until September 14, 2015. By all counts, this was well outside the statute's limitation period for filing a PWDEPA suit.

The parties cited no Delaware authority on point regarding whether different state agencies are to be treated as separate or the same regarding discrimination actions. It is instructive, however, to consider to what extent state agencies are treated as separate entities by other Delaware statutes.

As the State emphasizes, the Delaware Code regarding service and return of summons treats the state, agencies, administrative offices, and departments as separate entities.[36] Namely, 10 *Del.C.* § 3103, for purposes of defining sufficiency of service of process or summons, list agencies and departments separately.[37] The statute suggests that each administrative office and agency are separate and therefore require service to be made separately upon each. Furthermore, the Superior Court Civil Rules combine with this statute to provide that at least two individuals must be served when suing a state agency.[38] These two individuals are (1) the chief executive officer of the state

---

[36] 10 *Del. C.* § 3103.

[37] Section 3103 of Title 10 lists the State and its separate agencies separately when describing requirements for service of process. Namely, that section provides , *inter alia*, that "[n]o service of summons upon the State **or** upon any administrative office, agency, department, board **or** commission of the state government, or upon any officer of the state government . . . " are ineffective absent service, in part, on the Department of Justice(emphasis added).

[38] Super. Ct. Civ. Rule 4; 10 *Del C.* § 3103; *see Johnson v. Delaware*, 2013 WL 1285114, at *4 (D. Del. March 28, 2013) (recognizing that the Federal Rules of Civil Procedure and the applicable State Rule and Statute provide that at least two individuals must be served, the chief

agency being sued, and (2) the Attorney General, the Chief Deputy Attorney General, or the State Solicitor.[39] Requiring service on the chief executive officer of the agency being sued treats each agency as separate for purposes of identification of proper party.[40]

Moreover, PWDEPA itself contemplates treating state agencies as separate entities for purposes of exhaustion of administrative remedies and subsequent suits. Namely, in 19 *Del. C.* § 710(17), a "public employer" as defined for purposes of the PWDEPA, includes "the State of Delaware, its agencies, **or** political subdivisions."[41] Accordingly, in at least some respects, the Delaware statute creating the state cause of action at issue considers state agencies to be separate and distinct public employers.

Perhaps most germanely, Paitsel herself acknowledged that the two state agencies should be treated separately when she filed two separate charges of discrimination against DOL and DelDOT. Paitsel alleged separate and specific claims against each of the respective agencies. At no point did Paitsel treat the two claims as combined for purposes of exhausting her administrative remedies. Here, Patisel elected to completely bifurcate her claims with two separate charges against two separate agencies.

As provided in the PWDEPA, " a charging party may file a civil action in Superior Court, after exhausting the administrative remedies . .."[42]. The purpose of the

---

executive officer of the State agency being sued, and either the Attorney General, or the State Solicitor.)

[39] *Id.*

[40] *Id.*

[41] 19 *Del. C.* § 710(17) (emphasis added).

[42] 19 *Del.C.* § 714(a).

right to sue letter is to ensure that any subsequent suit is "within the limits of the initial administrative charge."[43] The administrative process Paitsel set in motion through two separate charges generated separate Right to Sue Notices, at different times. She was bound by law at that point to abide by the correct process as to each. Because Paitsel did not file a law suit against DelDOT for retaliation within 90 days of receiving the Right to Sue Letter addressing her complaint against DelDOT, the claim is now time barred by the statute of limitations.

Finally, even if Paitsel's DelDOT Superior Court claim related back to the initial filing of the complaint on February 15, 2015, it would be untimely. The 90 day window expired more than a year before her first filing in Superior Court regarding this case. Summary judgment dismissing Paitsel's state claims against DelDOT is appropriate.

**D.** **Paitsel's Federal ADA Claim is Barred Pursuant to the Eleventh Amendment to the United States Constitution.**

The State argues that Paitsel's ADA claim is barred by the Eleventh Amendment to the United States Constitution. The State asserts that it is immune to suits without the State's consent under constitutionally protected sovereign immunity. Paitsel responds by acknowledging that although states are immune from law suits seeking money damages, they are still subject to injunctive relief under certain circumstances.

The ADA is a federal statute that prohibits employers, including on its face states, from "discriminating against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring,

---

[43] *Twillie v. Eerie School District*, 575 Fed. Appx. 28, at *31 (3d Cir. 2014)(citing *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996)).

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[44] Under the ADA, an employer must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless the employer can show that the accommodation would result in an undue hardship to the business.[45]

The Supreme Court of the United States has expressly held that ADA suits against states are barred by the Eleventh Amendment.[46] In this regard, the Eleventh Amendment grants immunity from law suits by private individuals against non-consenting states.[47] It provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State."[48] This guarantee has been extended to suits by citizens against their own states.[49] As the U.S. Supreme Court further recognized, "[t]his jurisdictional bar applies regardless of the nature of relief sought."[50] A sovereign's immunity may only be waived by unequivocal express consent by the state.[51] Paitsel does not identify any such alleged express consent by the State of Delaware.

---

[44] *See Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 360-61 (2001) (citing 42 U.S.C. §§ 12112(a), 12111(2), (5), (7).)).

[45] *See Id.* at 361 (citing 42 U.S.C. § 12112(b)(5)(A)).

[46] *Id.* at 360.

[47] *Id.* at 363.

[48] *Id.*

[49] *Id.*

[50] *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

[51] *Id.* at 99.

Patisel emphasizes, however, that an exception to this general rule exists and has been recognized by the U.S. Supreme Court.[52] Paitsel is correct in that a law suit challenging the constitutionality of a state official's action is not considered a challenge against the State.[53] When a plaintiff sues a state official alleging a violation of federal law, the Court may award an injunction that governs future conduct, but may not award retroactive monetary relief.[54] Full sovereign immunity does not apply under this exception because an official who acts unconstitutionally is stripped of his or her official or representative character.[55] Retroactive relief is, however, still barred by the Eleventh Amendment and any award must be prospective.[56] This exception exists because the "Eleventh Amendment does not prevent a federal court from directing a state official to bring his conduct into conformity with federal law."[57]

This exception does not apply here. Paitsel's amended complaint no longer includes a state official as a named defendant. Setting aside the fact that equitable jurisdiction resides in Chancery Court, the individual sued in the initial complaint has been removed as a party.[58] Because no such claim exists, the exception to the Eleventh

---

[52] *Id.* at 102.

[53] *Id.*

[54] *Id.* at 102-03.

[55] *Id.* at 104.

[56] *Id.* at 103; *Rochester v. White*, 503 F.2d 263, 267 (3rd Cir. 1974).

[57] *Rochester,* 503 F.2d at 267.

[58] Paitsel's amended complaint seeks, *inter alia*, equitable prospective relief through various mandatory injunctions. The Superior Court, while not possessing inherent equitable authority, is granted the limited authority to order prospective equitable relief in PWDEPA actions pursuant to 19 *Del.C.* § 715. For the reasons cited, however, the Eleventh Amendment bars Paitsel's ADA claims in this instance.

Amendment permitting prospective injunctive relief does not apply. Therefore, summary judgment as to Paitsel's ADA claim against DOL and DelDOT must be granted.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** summary judgment dismissing Paitsel's ADA claims and PWDEPA claims against DelDOT without prejudice. Furthermore, summary judgment regarding Paitsel's breach of the covenant of good faith and fair dealing claim is also **GRANTED**.   Finally, the Court **DENIES**  DOL's summary judgment motion regarding Patisel's PWDEPA claims.

/s/Jeffrey J Clark
Judge

JJC/jb
*Via File & ServeXpress*

22