Justice Kennedy
delivered the opinion of the Court.
This case arises under the Age Discrimination in Employment Act of 1967 (ADEA or Act), 81 Stat. 602, as amended, *393 29 U. S. C. § 621 et seq. When an employee files “a charge alleging unlawful [age] discrimination” with the Equal Employment Opportunity Commission (EEOC), the charge sets the Act’s enforcement mechanisms in motion, commencing a waiting period during which the employee cannot file suit. The phrase, “a charge alleging unlawful discrimination,” is used in the statute, § 626(d), and “charge” appears in the agency’s implementing regulations; but it has no statutory definition. In deciding what constitutes a charge under the Act the Courts of Appeals have adopted different definitions. As a result, difficulties have arisen in determining when employees may seek relief under the ADE A in courts of competent jurisdiction.
As a cautionary preface, we note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e et seq., and the Americans with Disabilities Act of 1990, 104 Stat. 327, as amended, 42 U. S. C. § 12101 et seq. While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. Cf. General Dynamics Land Systems, Inc. v. Cline, 540 U. S. 581, 586-587 (2004). This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case.
I
Petitioner, Federal Express Corporation (FedEx), provides mail pickup and delivery services to customers worldwide. In 1994 and 1995, FedEx initiated two programs, designed, it says, to make its 45,000-strong courier network more productive. The programs, “Best Practice Pays” (BPP) and “Minimum Acceptable Performance Standards” *394 (MAPS), tied the couriers’ compensation and continued employment to certain performance benchmarks, for instance the number of stops a courier makes per day.
Respondents are 14 current and former FedEx couriers over the age of 40. They filed suit in the United States District Court for the Southern District of New York on April 30,2002, claiming, inter alia, that BPP and MAPS violate the ADEA. Asserting that their claims were typical of many couriers nationwide, respondents sought to represent a plaintiffs’ class of all couriers over the age of 40 who were subject to alleged acts of age discrimination by FedEx. The suit maintains that BPP and MAPS were veiled attempts to force older workers out of the company before they would be entitled to receive retirement benefits. FedEx, it is alleged, used the initiatives as a pretext for harassing and discriminating against older couriers in favor of younger ones.
The immediate question before us is the timeliness of the suit filed by one of the plaintiffs below, Patricia Kennedy, referred to here as “respondent.” Petitioner moved to dismiss respondent’s action, contending respondent had not filed her charge with the EEOC at least 60 days before filing suit, as required by 29 U. S. C. § 626(d). Respondent countered that she filed a valid charge on December 11, 2001, by submitting EEOC Form 283.
The agency labels Form 283 an “Intake Questionnaire.” Respondent attached to the questionnaire a signed affidavit describing the alleged discriminatory employment practices in greater detail. The District Court determined these documents were not a charge and granted the motion to dismiss. No. 02 Civ. 3355(LMM) (SDNY, Oct. 9, 2002), App. to Pet. for Cert. 39a. An appeal followed, and the Court of Appeals for the Second Circuit reversed. See 440 F. 3d 558, 570 (2006). We granted certiorari to consider whether respondent’s filing was a charge, 551 U. S. 1102 (2007), and we now affirm.
*395 II
This case presents two distinct questions: What is a charge as the ADEA uses that term? And were the documents respondent filed in December 2001 a charge?
A
The relevant statutory provision states:
“No civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. . . .
“Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.” 29 U. S. C. § 626(d).
The Act does not define charge. While EEOC regulations give some content to the term, they fall short of a comprehensive definition. The agency has statutory authority to issue regulations, see § 628; and when an agency invokes its authority to issue regulations, which then interpret ambiguous statutory terms, the courts defer to its reasonable interpretations. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837, 843-845 (1984). The regulations the agency has adopted — so far as they go — are reasonable constructions of the term charge. There is little dispute about this. The issue is the guidance the regulations give.
One of the regulations, 29 CFR § 1626.3 (2007), is entitled “Other definitions.” It says: “charge shall mean a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant *396 has engaged in or is about to engage in actions in violation of the Act.” Section 1626.8(a) identifies five pieces of information a “charge should contain”: (l)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings. The next subsection, § 1626.8(b), however, seems to qualify these requirements by stating that a charge is “sufficient” if it meets the requirements of § 1626.6 — i. e., if it is “in writing and . . . name[s] the prospective respondent and . . . generally allege[s] the discriminatory act(s).”
Even with the aid of the regulations the meaning of charge remains unclear, as is evident from the differing positions of the parties now before us and in the Courts of Appeals. Petitioner contends an Intake Questionnaire cannot be a charge unless the EEOC acts upon it. On the other hand some Courts of Appeals, including the Court of Appeals for the Second Circuit, take a position similar to the Government’s in this case, that an Intake Questionnaire can constitute a charge if it expresses the filer’s intent to activate the EEOC’s enforcement processes. See, e. g., Steffen v. Meridian Life Ins. Co., 859 F. 2d 534, 542 (CA7 1988). A third view, which seems to accord with respondent’s position, is that all completed Intake Questionnaires are charges. See, e. g., Casavantes v. California State Univ., Sacramento, 732 F. 2d 1441, 1443 (CA9 1984).
B
In support of her position that the Intake Questionnaire she filed, taken together with the attached six-page affidavit, meets the regulatory definition of a charge, respondent places considerable emphasis on what might be described as the regulations’ catchall or saving provision, 29 CFR § 1626.8(b). This seems to require only a written document *397 with a general allegation of discriminatory conduct by a named employer. Respondent points out that, when read together, §§ 1626.8(b) and 1626.6 say that a “charge is sufficient when the Commission receives ... a written statement” that “name[s] the [employer] and . . . generally allege[s] the discriminatory act(s).” Respondent views this language as unequivocal and sees no basis for requiring that a charge contain any additional information.
The EEOC’s view, as expressed in the Government’s amicus brief, however, is that the regulations identify certain requirements for a charge but do not provide an exhaustive definition. As such, not all documents that meet the minimal requirements of § 1626.6 are charges.
The question, then, becomes how to interpret the scope of the regulations. Just as we defer to an agency’s reasonable interpretations of the statute when it issues regulations in the first instance, see Chevron, swpra, the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force. See Auer v. Robbins, 519 U. S. 452 (1997). Under Auer, we accept the agency’s position unless it is “ ‘ “plainly erroneous or inconsistent with the regulation.” ’ ” Id., at 461 (quoting Robertson v. Methow Valley Citizens Council, 490 U. S. 332, 359 (1989)).
In accord with this standard we accept the agency’s position that the regulations do not identify all necessary components of a charge; and it follows that a document meeting the requirements of § 1626.6 is not a charge in every instance. The language in §§1626.6 and 1626.8 cannot be viewed in isolation from the rest of the regulations. True, the structure of the regulations is less than clear. But the relevant provisions are grouped under the title, “Procedures — Age Discrimination in Employment Act.” A permissible reading is that the regulations identify the procedures for filing a charge but do not state the full contents a charge document must contain. This is the agency’s position, and we defer to it under Auer.
*398 c
This does not resolve the case. While we agree with the Government that the regulations do not state all the elements a charge must contain, the question of what additional elements are required remains. On this point the regulations are silent.
The EEOC submits that the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights. Brief for United States as Amicus Curiae 15. The EEOC has adopted this position in the Government’s amicus brief and in various internal directives it has issued to its field offices over the years. See 1 EEOC Compliance Manual § 2.2(b), p. 2:0001 (Aug. 2002); Memorandum from Elizabeth M. Thornton, Director, Office of Field Programs, EEOC, to All District, Area, and Local Office Directors et al. (Feb. 21, 2002), online at http://www.eeoc.gov/charge/memo2-21-02.html (hereinafter Thornton Memo) (all Internet materials as visited Feb. 21, 2008, and available in Clerk of Court’s case file); Memorandum from Nicholas M. Inzeo, Director, Office of Field Programs, EEOC, to All District, Field, Area, and Local Office Directors et al. (Aug. 13, 2007), online at http://www.eeoc.gov/charge/memo-8-13-07.html. The Government asserts that this request-to-act requirement is a reasonable extrapolation of the agency’s regulations and that, as a result, the agency’s position is dispositive under Auer.
The Government acknowledges the regulations do not, on their face, speak to the filer’s intent. To the extent the request-to-act requirement can be derived from the text of the regulations, it must spring from the term charge. But, in this context, the term charge is not a construct of the agency’s regulations. It is a term Congress used in the underlying statute that has been incorporated in the regulations by the agency. Thus, insofar as they speak to the fil *399 er’s intent, the regulations do so by repeating language from the underlying statute. It could be argued, then, that this case can be distinguished from Auer. See Gonzales v. Oregon, 546 U. S. 243, 257 (2006) (the “near equivalence of the statute and regulation belies [the case for] Auer deference”); Christensen v. Harris County, 529 U. S. 576, 588 (2000) (an agency cannot “under the guise of interpreting a regulation . . . create de facto a new regulation”).
It is not necessary to hold that Auer deference applies to the agency’s construction of the term charge as it is used in the regulations, however. For even if Auer deference is inapplicable, we would accept the agency’s proposed construction of the statutory term, and we turn next to the reasons for this conclusion.
D
In our view the agency’s policy statements, embodied in its compliance manual and internal directives, interpret not only the regulations but also the statute itself. Assuming these interpretive statements are not entitled to full Chevron deference, they do reflect ‘“a body of experience and informed judgment to which courts and litigants may properly resort for guidance.’ ” Bragdon v. Abbott, 524 U. S. 624, 642 (1998) (quoting Skidmore v. Swift & Co., 323 U. S. 134, 139-140 (1944)). As such, they are entitled to a “measure of respect” under the less deferential Skidmore standard. Alaska Dept. of Environmental Conservation v. EPA, 540 U. S. 461, 487, 488 (2004); United States v. Mead Corp., 533 U. S. 218, 227-239 (2001).
Under Skidmore, we consider whether the agency has applied its position with consistency. Mead Corp., supra, at 228; Good Samaritan Hospital v. Shalala, 508 U. S. 402, 417 (1993). Here, the relevant interpretive statement, embodied in the compliance manual and memoranda, has been binding on EEOC staff for at least five years. See Thornton Memo, supra. True, as the Government concedes, the agency’s implementation of this policy has been uneven. See Brief for *400 United States as Amicus Curiae 25. In the very case before us the EEOC’s Tampa field office did not treat respondent’s filing as a charge, as the Government now maintains it should have done. And, as a result, respondent filed suit before the agency could initiate a conciliation process with the employer.
These undoubted deficiencies in. the agency’s administration of the statute and its regulatory scheme are not enough, however, to deprive the agency of all judicial deference. Some degree of inconsistent treatment is unavoidable when the agency processes over 175,000 inquiries a year. Id., at 19, n. 10. And although one of the policy memoranda the Government relies upon was circulated after we granted certiorari, the position the document takes is consistent with the EEOC’s previous directives. We see no reason to assume the agency’s position — that a charge is filed when the employee requests some action — was framed for the specific purpose of aiding a party in this litigation. Cf. Bowen v. Georgetown Univ. Hospital, 488 U. S. 204, 212-213 (1988).
The EEOC, moreover, has drawn our attention to the need to define charge in a way that allows the agency to fulfill its distinct statutory functions of enforcing antidiscrimination laws and disseminating information about those laws to the public. Cf. Barnhart v. Walton, 535 U. S. 212, 225 (2002) (noting that deference is appropriate in “matters of detail related to [an agency’s] administration” of a statute). The agency’s duty to initiate informal dispute resolution processes upon receipt of a charge is mandatory in the ADEA context. See 29 U. S. C. § 626(d) (“[T]he Commission . . . shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion”); Cf. Lopez v. Davis, 531 U. S. 230,241 (2001) (noting that Congress’ use of the term “ ‘shall’ ” indicates an intent to “impose discretionless obligations”). Yet, at the same time, Congress intended the agency to serve an “educational” function. See Civil Rights Act of 1964, § 705(i), 78 Stat. 259; *401 id., § 705(g)(3) (noting that the Commission shall have the power to “furnish to persons subject to this title such technical assistance as they may request”). Providing answers to the public’s questions is a critical part of the EEOC’s mission; and it accounts for a substantial part of the agency’s work. Of about 175,000 inquiries the agency receives each year, it dockets around 76,000 of these as charges. Brief for United States as Amicus Curiae 19, n. 10. Even allowing for errors in the classification of charges and noncharges, it is evident that many filings come from individuals who have questions about their rights and simply want information.
For efficient operations, and to effect congressional intent, the agency requires some mechanism to separate information requests from enforcement requests. Respondent’s proposed standard, that a charge need contain only an allegation of discrimination and the name of the employer, falls short in this regard. Were that stripped-down standard to prevail, individuals who approach the agency with questions could end up divulging enough information to create a charge. This likely would be the case for anyone who completes an Intake Questionnaire — which provides space to indicate the name and address of the offending employer and asks the individual to answer the question, “What action was taken against you that you believe to be discrimination?” App. to Pet. for Cert. 43a. If an individual knows that reporting this minimal information to the agency will mandate the agency to notify her employer, she may be discouraged from consulting the agency or wait until her employment situation has become so untenable that conciliation efforts would be futile. The result would be contrary to Congress’ expressed desire that the EEOC act as an information provider and try to settle employment disputes through informal means.
For these reasons, the definition of charge respondent advocates — i. e., that it need conform only to 29 CFR § 1626.6— is in considerable tension with the structure and purposes of the ADEA. The agency’s interpretive position — the *402 request-to-act requirement — provides a reasonable alternative that is consistent with the statutory framework. No clearer alternatives are within our authority or expertise to adopt; and so deference to the agency is appropriate under Skidmore. We conclude as follows: In addition to the information required by the regulations, i. e., an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee’s rights or otherwise settle a dispute between the employer and the employee.
Some Courts of Appeals have referred to a “ ‘manifest intent’ ” test, under which, in order to be deemed a charge, the filing must demonstrate “an individual’s intent to have the agency initiate its investigatory and conciliatory processes.” 440 F. 3d, at 566 (case below); see also Wilkerson v. Grinnell Corp., 270 F. 3d 1314, 1319 (CA11 2001); Steffen, 859 F. 2d, at 543; Bihler v. Singer Co., 710 F. 2d 96, 99 (CA3 1983). If this formulation suggests the filer’s state of mind is somehow determinative, it misses the point. If, however, it means the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes, that would be in accord with our conclusion.
It is true that under this permissive standard a wide range of documents might be classified as charges. But this result is consistent with the design and purpose of the ADEA. Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties. See Estelle v. Gamble, 429 U. S. 97, 106 (1976) (Pro se pleadings are to be “liberally construed”). In the administrative context now before us it appears pro se filings may be the rule, not the exception. The ADEA, like Title VII, sets up a “remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.” EEOC v. Commercial Of *403 fice Products Co., 486 U. S. 107, 124 (1988); see also Oscar Mayer & Co. v. Evans, 441 U. S. 750, 756 (1979) (noting the “common purpose” of Title VII and the ADEA). The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes. It thus is consistent with the purposes of the Act that a charge can be a form, easy to complete, or an informal document, easy to draft. The agency’s proposed test implements these purposes.
Reasonable arguments can be made that the agency should adopt a standard giving more guidance to filers, making it clear that the request to act must be stated in quite explicit terms. A rule of that sort might yield more consistent results. This, however, is a matter for the agency to decide in light of its experience and expertise in protecting the rights of those who are covered by the Act. For its decisions in this regard the agency is subject to the oversight of the political branches. Cf. National Cable & Telecommunications Assn. v. Brand X Internet Services, 545 U. S. 967, 980 (2005) (“Filling these gaps [in ambiguous statutes] involves difficult policy choices that agencies are better equipped to make than courts”). We find no reason in this case to depart from our usual rule: Where ambiguities in statutory analysis and application are presented, the agency may choose among reasonable alternatives.
E
Asserting its interest as an employer, petitioner urges us to condition the definition of charge, and hence an employee’s ability to sue, upon the EEOC’s fulfilling its mandatory duty to notify the charged party and initiate a conciliation process. In petitioner’s view, because the Commission must act “[u]pon receiving such a charge,” 29 U. S. C. § 626(d), its failure to do so means the filing is not a charge.
The agency rejects this view, as do we. As a textual matter, the proposal is too artificial a reading of the statute to accept. The statute requires the aggrieved individual to file *404 a charge before filing a lawsuit; it does not condition the individual’s right to sue upon the agency taking any action. Ibid. (“No civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission”); Cf. Edelman v. Lynchburg College, 535 U. S. 106, 112-113 (2002) (rejecting the argument that a charge is not a charge until the filer satisfies Title VII’s oath or affirmation requirement). The filing of a charge, moreover, determines when the Act’s time limits and procedural mechanisms commence. It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control. Cf. Logan v. Zimmerman Brush Co., 455 U. S. 422, 444 (1982) (Powell, J., concurring in judgment).
Ill
Having determined that the agency acted within its authority in formulating the rule that a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee’s behalf, the question is whether the filing here meets this test. The agency says it does, and we agree. The agency’s determination is a reasonable exercise of its authority to apply its own regulations and procedures in the course of the routine administration of the statute it enforces.
Respondent’s completed intake form contained all of the information outlined in 29 CFR § 1626.8, including: the employee’s name, address, and telephone number, as well as those of her employer; an allegation that she and other employees had been the victims of “age discrimination”; the number of employees who worked at the Dunedin, Florida, facility where she was stationed; and a statement indicating she had not sought the assistance of any government agency regarding this matter. See App. 265.
*405 Petitioner maintains the filing was still deficient because it contained no request for the agency to act. Were the Intake Questionnaire the only document before us we might agree its handwritten statements do not request action. The design of the form in use in 2001, moreover, does not give rise to the inference that the employee requests action against the employer. Unlike EEOC Form 5, the Intake Questionnaire is not labeled a “Charge of Discrimination,” see id., at 275. In fact the wording of the questionnaire suggests the opposite: that the form’s purpose is to facilitate “pre-charge filing counseling” and to enable the agency to determine whether it has jurisdiction over “potential charges.” Id., at 265. There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge.
In this case, however, the completed questionnaire filed in December 2001 was supplemented with a detailed six-page affidavit. At the end of the last page, respondent asked the agency to “[pjlease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of Best Practice/High-Velocity Culture Change.” Id., at 273. This is properly construed as a request for the agency to act.
Petitioner says that, in context, the statement is ambiguous. It points to respondent’s accompanying statement that “I have been given assurances by an Agent of the U. S. Equal Employment Opportunity Commission that this Affidavit will be considered confidential by the United States Government and will not be disclosed as long as the case remains open unless it becomes necessary for the Government to produce the affidavit in a formal proceeding.” Id., at 266. Petitioner argues that if respondent intended the affidavit to *406 be kept confidential, she could not have expected the agency to treat it as a charge. This reads too much into the assurance of nondisclosure. Respondent did not request the agency to avoid contacting her employer. She stated only her understanding that the affidavit itself would be kept confidential. Even then, she gave consent for the agency to disclose the affidavit in a “formal proceeding.” Furthermore, respondent checked a box on the Intake Questionnaire giving consent for the agency to disclose her identity to the employer. Id., at 265. Here the combination of the waiver and respondent’s request in the affidavit that the agency “force” the employer to stop discriminating against her were enough to bring the entire filing within the definition of charge we adopt here.'
Petitioner notes that respondent did file a Form 5 (a formal charge) with the EEOC but only after she filed her complaint in the District Court. This shows, petitioner argues, that respondent did not intend the earlier December 2001 filing to be a charge; otherwise, there would have been no reason for the later filing. What matters, however, is whether the documents filed in December 2001 should be interpreted as a request for the agency to act. Postfiling conduct does not nullify an earlier, proper charge.
Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee’s rights and statutory remedies. Construing ambiguities against the drafter may be the more efficient rule to encourage precise expression in other contexts; here, however, the rule would undermine the remedial scheme Congress adopted. It would encourage individuals to avoid filing errors by retaining counsel, increasing both the cost and likelihood of litigation.
IV
The Federal Government interacts with individual citizens through all but countless forms, schedules, manuals, and *407 worksheets. Congress, in most cases, delegates the format and design of these instruments to the agencies that administer the relevant laws and processes. An assumption underlying the congressional decision to delegate rulemaking and enforcement authority to the agency, and the consequent judicial rule of deference to the agency’s determinations, is that the agency will take all efforts to ensure that affected parties will receive the full benefits and protections of the law. Here, because the agency failed to treat respondent’s filing as a charge in the first instance, both sides lost the benefits of the ADEA’s informal dispute resolution process.
The employer’s interests, in particular, were given short shrift, for it was not notified of respondent’s complaint until she filed suit. The court that hears the merits of this litigation can attempt to remedy this deficiency by staying the proceedings to allow an opportunity for conciliation and settlement. True, that remedy would be imperfect. Once the adversary process has begun a dispute may be in a more rigid cast than if conciliation had been attempted at the outset.
This result is unfortunate, but, at least in this case, unavoidable. While courts will use their powers to fashion the best relief possible in situations like this one, the ultimate responsibility for establishing a clearer, more consistent process lies with the agency. The agency already has made some changes to the charge-filing process. See Brief for United States as Amicus Curiae 3, n. 2 (noting that the Intake Questionnaire form respondent filed has been replaced with a reworded form). To reduce the risk of further misunderstandings by those who seek its assistance, the agency should determine, in the first instance, what additional revisions in its forms and processes are necessary or appropriate.
The judgment of the Court of Appeals is affirmed.

It is so ordered.