# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30879

TIMOTHY PATTON,

Plaintiff–Appellant,

v.

JACOBS ENGINEERING GROUP, INCORPORATED; TALASCEND, L.L.C.,

Defendants–Appellees.

United States Court of Appeals
Fifth Circuit

**FILED**

July 17, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Middle District of Louisiana

Before KING, JOLLY, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Plaintiff–Appellant Timothy Patton brought this American Disabilities Act ("ADA") case against Jacobs Engineering Group Inc. ("Jacobs") and Talascend, LLC ("Talascend"). The district court granted summary judgment against Patton on his failure to accommodate and hostile work environment claims. For the reasons stated below, we AFFIRM.

## I. BACKGROUND

Patton designs electrical and instrumentation systems. He also has an obvious stutter. Talascend is a staffing agency which furnishes contract employees, including engineers and designers, to its clients. Jacobs, an engineering firm, is one of Talascend's clients. Patton has been an employee of

No. 16-30879

Talascend since October 2012, when he was assigned to work at Jacobs' facility in Baton Rouge, Louisiana. Around the time he was hired, Patton told Emily Wimbley, a Talascend recruiter, about his stuttering and anxiety problems, which he said "all go[] together."

Patton alleges that his coworkers at Jacobs harassed him on account of his stutter. For example, coworkers would call him names such as lawnmower and bush hog (a type of lawnmower). Additionally, coworkers who passed him in the hallway or met him on the elevator would mock his stuttering, and coworkers who sat near him would mock him and make loud noises right behind him. Even his supervisor, Greg Guillory, allegedly mocked him at a department-wide meeting in front of fifty coworkers. Patton testified that he complained about this harassment to Guillory and Wimbley; in addition, he testified that he called and left a message with Talascend's human resources department, but that this call was never returned.

Patton also made a number of complaints about noise while he worked at Jacobs. According to Patton, the work environment at Jacobs was full of "loud laughter, banging, [and] horseplay." He complained to Guillory three times about the noise in his work space and asked Guillory "to move [him] to an area that was quiet so that [his] nerves would not affect [his] stuttering." Patton also discussed the noise problem with Wimbley at Talascend. Talascend offered to reassign Patton to another client and also raised the issue with Guillory. But Patton continued working at Jacobs and by all accounts performed his job well.

According to Patton, the harassment and excessive noise at Jacobs caused him to experience severe anxiety. He emailed Bruce Kistrup, a lead engineer, four times about taking off work due to his stress. As a result of this stress, Patton suffered a panic attack while driving and got into a car accident

2

on February 28, 2014. Patton did not return to work at Jacobs after this accident.

On May 7, 2014, Patton filed a charge of discrimination with the Louisiana Commission on Human Rights ("LCHR") and the U.S. Equal Employment Opportunity Commission ("EEOC").[1] He asserted that he was harassed on account of his disability. Specifically, Patton alleged the following facts:

> I was subjected to psychological violence. People made habitual efforts to talk repetitively in an unnatural, intensified loud voice while near me. I was subjected to name calling such as "bush hog", "how pathetic" and "don't fit in." Several people would mock my stuttering while looking directly at me. On one occasion Greg Guillory while speaking in a meeting began to stutter while looking directly at me. I have been excluded from work related lunches/dinners, left out of the communication loop and meeting announcements. I complained on several occasions to management from both Jacobs and Talascend but nothing was done. On February 28, 2014 I was involved in an accident and became stressed to the point that I am currently out on a medical leave.

Patton also filed an intake questionnaire on May 7, 2014. In the intake questionnaire, Patton clarified that his disability consisted of stuttering, anxiety, and noise sensitivity. He also stated that he requested changes or assistance because of his disability but that his employer did not make any actual changes in response to his requests. Patton later amended his charge of discrimination on September 30, 2014, to add a claim of sex discrimination.

During the EEOC investigation, Talascend and Jacobs submitted position statements in which they disputed Patton's allegations of discrimination. These position statements focused on the harassment allegations, though Jacobs also responded to the allegation that it failed to

---

[1] Although Patton filed the charge of discrimination with both the LCHR and the EEOC, it appears that only the EEOC investigated the charge.

accommodate Patton's disability. The EEOC issued a notice of right to sue letter on November 24, 2014.

Patton filed suit in Louisiana state court on February 6, 2015. He brought four claims against Jacobs and Talascend: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) hostile work environment in violation of the ADA; and (4) failure to accommodate in violation of the ADA. Shortly after the defendants removed the case to federal court, Patton's negligent infliction of emotional distress claim was dismissed. Jacobs and Talascend moved for summary judgment in May 2016.

The district court granted summary judgment in favor of both defendants on all claims. First, the district court held that Patton failed to administratively exhaust his failure to accommodate claim. In the alternative, the district court held that Patton failed to put forth sufficient evidence showing that the defendants were aware of his disability. Second, the district court held that Patton failed to introduce sufficient evidence of a hostile work environment. The district court also found that Patton failed to take advantage of the complaint procedures in either defendant's anti-harassment policy. Finally, the district court held that Patton failed to put forth sufficient evidence in support of his intentional infliction of emotional distress claim. This appeal followed.

## II. DISCUSSION

On appeal, Patton argues that the district court erred in granting summary judgment against him on his failure to accommodate and hostile work environment claims. Patton does not brief his intentional infliction of emotional distress claim; accordingly, we confine our review to his ADA claims.

### A.    Standard of Review

"This Court 'reviews de novo the district court's grant of summary judgment, applying the same standard as the district court.'" *Feist v. La., Dep't*

No. 16-30879

*of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court "must view all facts and evidence in the light most favorable to the non-moving party." *Feist*, 730 F.3d at 452 (quoting *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013)).

## B.    Analysis

### 1. Failure to Accommodate

The ADA forbids covered employers from "discriminat[ing] against a qualified individual on the basis of disability" regarding the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." *Id.* § 12112(b)(5)(A). To establish a failure to accommodate claim, the plaintiff must show that: "(1) the plaintiff is a 'qualified individual with a disability'; (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452 (quoting 42 U.S.C. § 12112(b)(5)(A)).

Patton asserts that he is disabled on account of childhood onset fluency disorder. He contends that "the noisy office environment heightened his anxiety, caused [him] to suffer panic attacks and worsened his stuttering over

5

time." But according to Patton, Jacobs and Talascend "did nothing" to address the noise issue. Eventually, Patton's anxiety caused him to miss work and get into a car accident.

Neither Jacobs nor Talascend contests that Patton is a qualified individual with a disability; thus, we assume without deciding that Patton has proved the first element of his failure to accommodate claim. But Jacobs and Talascend dispute the other two elements—whether they knew of his disability and whether they failed to accommodate it. In addition, Jacobs and Talascend argue that Patton failed to administratively exhaust his failure to accommodate claim, and Talascend argues that Patton's charge was not timely. We address the exhaustion argument first.

### a. Administrative exhaustion

Before a plaintiff may file her ADA claim in federal court, she must exhaust her administrative remedies. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam) (noting that the ADA incorporates by reference Title VII's administrative procedures). Specifically, the plaintiff must file a charge of discrimination with the EEOC within 180 days of "the alleged unlawful employment practice," or within 300 days if the charge is filed with a state or local agency—here, the LCHR. 42 U.S.C. § 2000e-5(e)(1).

In determining whether a plaintiff has exhausted a particular claim, we have noted that "the scope of an EEOC complaint should be construed liberally." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). "On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims." *Id.* at 788–89. To balance these considerations, "this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which

No. 16-30879

'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 789 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). "We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." *Id.*

The district court held that Patton failed to exhaust his failure to accommodate claim by not including it in the charge. As the district court found, the formal charge does not suggest that either Talascend or Jacobs failed to accommodate Patton's disability. But Patton did state in the intake questionnaire that he requested changes or assistance because of his disability, and that Jacobs and Talascend "brushed [him] off" and made "no actual changes."

Patton argues that the intake questionnaire should be considered a charge under *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008). There, the Court recognized that an intake questionnaire may constitute a charge under the Age Discrimination in Employment Act. The Court specified that "a filing is to be deemed a charge" if it both satisfies the regulatory requirements of a charge and may be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. Patton's intake questionnaire, however, is not verified as required by EEOC regulations. 29 C.F.R. § 1601.7. Thus, the questionnaire alone cannot be deemed a charge.

Nevertheless, if the intake questionnaire is considered *part* of the formal charge Patton did file, the scope of the EEOC investigation growing out of the charge could reasonably be expected to include a failure to accommodate claim. We find that Patton's intake questionnaire should be construed as part of the EEOC charge. Patton filed his intake questionnaire together with his formal charge of discrimination on May 7, 2014. The charge form directs complainants

7

to "attach extra sheet(s)" "[i]f additional paper is needed." Moreover, the EEOC investigation clearly encompassed Patton's failure to accommodate claim. In its position statement, Jacobs stated that "Patton never made any request for reasonable accommodation from Jacobs." The position statement also responds to a question—presumably posed by the EEOC—about Patton's request for a reasonable accommodation. Thus, Patton did in fact "trigger the investigatory and conciliatory procedures of the EEOC" regarding his failure to accommodate claim. *Pacheco*, 448 F.3d at 788–89. Construing the scope of Patton's charge liberally, we hold that his failure to accommodate claim could reasonably be expected to—and in fact did—grow out of his charge of discrimination.

### b. *Knowledge of disability*

In addition to finding Patton's failure to accommodate claim unexhausted, the district court granted summary judgment on the alternative ground that Patton failed to put forth sufficient evidence showing that either Jacobs or Talascend knew of his disability. "Under the ADA, an actionable disability means, in relevant part, a physical or mental impairment that substantially limits one or more of the major life activities of an individual." *Taylor v. Principal Fin. Grp.*, 93 F.3d 155, 163 (5th Cir. 1996) (footnote omitted) (citing 42 U.S.C. § 12102). "This court has recognized that 'where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations.'" *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) (omission in original) (quoting *Taylor*, 93 F.3d at 165). Although the employee need not utter any magic words, she "must explain that the adjustment in working

conditions or duties she is seeking is for a medical condition-related reason." *Id.*

We agree with the district court that there is insufficient evidence to prove either Jacobs' or Talascend's knowledge of Patton's disability. Of course, Patton's stutter was obvious. And it is clear that Patton complained about noise on several occasions. But Patton must show that the defendants attributed Patton's limitation—sensitivity to noise—to a physical or mental impairment; in other words, they must have known that Patton sought a quieter work environment because of a medical condition.

The only evidence supporting Talascend's knowledge of Patton's disability and resulting limitation is Patton's testimony that he told Emily Wimbley that his stuttering and anxiety problems "all go[] together." He also told her "that at a previous job [he] was sensitive to [noise]." These statements are too vague to show that Patton identified his sensitivity to noise as a limitation resulting from a disability.[2]

Whether sufficient evidence supports Jacobs' knowledge of Patton's disability and resulting limitation is a closer question. Patton testified that he asked Jacobs "to move [him] to a quiet area so that [his] stuttering—[his] nerves would decrease, [his] nervous system problems would stop causing [his] increase in stuttering." It is reasonable to infer that based on this request, Jacobs was on notice that noise aggravated Patton's anxiety, which in turn aggravated his stuttering. But this is not enough; a jury must be able to infer Jacobs' knowledge of the "limitations experienced by the employee *as a result of* [his] disability." *Taylor*, 93 F.3d at 164 (emphasis added). In the case of a mental disability such as childhood onset fluency disorder, specificity in

---

[2] Because we dispose of Patton's failure to accommodate claim against Talascend on the merits, we need not address Talascend's alternative argument that Patton's EEOC charge was untimely.

attributing a work limitation to a disability is particularly important. *See id.* at 164–65. Patton did not tell Jacobs that his disability *caused* his noise sensitivity, nor was this causal relationship obvious. Accordingly, as the district court held, Patton "has not created a genuine dispute of fact that he adequately linked office noise to an aggravation of his disability, which in turn gave rise to a workplace limitation for which [Jacobs] should have been aware." The district court did not err in granting summary judgment against Patton on his failure to accommodate claim.

### 2. Hostile Work Environment

To establish a hostile work environment claim under the ADA, a plaintiff must show:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001) (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). "Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). In determining whether the work environment is hostile, this Court examines the totality of circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Ramsey*, 286 F.3d at 268). But "simple teasing, offhand comments,

and isolated incidents (unless extremely serious)" do not suffice to alter the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and internal quotation marks omitted).

The district court held that Patton failed to satisfy the fourth and fifth elements of a hostile work environment claim. On appeal, Patton emphasizes that the "vicious cycle of mental and physical abuse" he experienced while at Jacobs created a "hostile and abusive" work environment.[3] Jacobs disputes whether this abuse actually occurred, noting that none of Patton's coworkers corroborated his account and that Patton did not complain of any harassment while he worked at Jacobs. Jacobs also argues that Patton has only pointed to a few instances of teasing and offhand comments, none of which affected Patton's work performance and which do not meet the Fifth Circuit's high bar for a hostile work environment.

Viewing the record in the light most favorable to Patton, a jury could find that the harassment Patton experienced at Jacobs was sufficiently severe or pervasive to alter the terms and conditions of his employment. There is evidence that the alleged harassment was pervasive; for example, Patton testified that "there were a lot of names by quite a few people over an extended period of time," and that he was called names like bush hog and lawnmower every week. Patton was not as clear about how often his coworkers mocked his stuttering, but his testimony suggests that he was repeatedly mocked by various individuals—in the hallway, on the elevator, and around his desk. This conduct rises above simple teasing and offhand comments. *Cf. EEOC v. WC&M Enters., Inc.*, 496 F.3d 393, 400–01 (5th Cir. 2007) (holding that "a long-term

---

[3] Patton also seems to contend that general office noise at Jacobs contributed to the hostile work environment. As the district court noted, however, a noisy office environment does not support Patton's ADA claim because the noise was not directed at Patton. Thus, the noisy office environment was not "based on" Patton's disability. *Flowers*, 247 F.3d at 235 (quoting *McCarthy*, 131 F.3d at 563).

pattern of ridicule" based on the plaintiff's national origin and religion, including name-calling and mocking, sufficed to establish a hostile work environment claim under Title VII). Patton also testified about a particularly severe incident in which his supervisor, Greg Guillory, mocked him at a department-wide meeting. Furthermore, it is reasonable to infer that this harassment contributed to the anxiety that forced Patton to miss work, thus interfering with his work performance. Based on these facts, Patton has put forth sufficient evidence in support of the fourth element of a hostile work environment claim.

Nevertheless, we agree with the district court that Patton has failed to show that either defendant failed to take prompt, remedial action addressing the alleged harassment. We have held that a hostile work environment claim fails as a matter of law if the plaintiff "unreasonably failed to take advantage of corrective opportunities provided by" the employer. *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 330 (5th Cir. 2004). In *Hockman*, for example, we affirmed summary judgment against a plaintiff who failed to report her complaint to the human resources department even though the employee handbook directed her to do so. *Id.* at 329–30.

Here, the employee handbooks of both Talascend and Jacobs directed employees who experience harassment to contact the human resources department. No evidence in the record suggests that Patton complied with these policies. Patton did testify that he called the Talascend human resources department once in early 2013 and left a message, but he did not describe the content of this message and did not follow up. Nor does Patton argue that complying with either Talascend's or Jacobs' reporting policy would have been futile. *See Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 301 (5th Cir. 2001) (noting that "once it becomes objectively obvious that the employer has no real intention of stopping the harassment, the harassed employee is not obliged to

go through the wasted motion of reporting the harassment"). Thus, Patton unreasonably failed to take advantage of the corrective opportunities provided by Talascend and Jacobs. The district court did not err in granting summary judgment against Patton on his hostile work environment claim.

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment against Patton is AFFIRMED.