# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 3, 2020

Lyle W. Cayce
Clerk

No. 19-20541

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff - Appellant

v.

VANTAGE ENERGY SERVICES, INCORPORATED; VANTAGE DRILLING INTERNATIONAL, formerly known as Offshore Group Investment Limited; VANTAGE INTERNATIONAL MANAGEMENT COMPANY PTE. LIMITED,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, JONES, and ENGELHARDT, Circuit Judges.

PER CURIAM:

The Equal Employment Opportunity Commission ("EEOC") brought an enforcement action against the defendants-appellees ("Vantage") on behalf of David Poston, alleging that Vantage discriminated against Poston in violation of the Americans with Disabilities Act ("ADA"). Vantage moved to dismiss for failure to state a claim, arguing, *inter alia*, that the EEOC failed to exhaust administrative remedies. In a one-sentence judgment, the district court agreed and dismissed the case with prejudice. In so holding, however, the district court failed to follow controlling Supreme Court authority permitting the

No. 19-20541

enforcement action. We publish this opinion to clarify the reach of our previous precedent, and REVERSE and REMAND for further proceedings.

## BACKGROUND

David Poston worked for Vantage on a deep-water drillship off the coast of Equatorial Guinea. While working on the ship, he suffered a heart attack, was airlifted to Israel, then South Africa for treatment, and sent home. Vantage placed Poston on short-term disability leave. On the day Poston was due to return to work—October 2, 2014—Vantage fired him, allegedly on account of his poor work performance.

Poston viewed the termination differently and hired counsel to pursue legal action. Poston's attorney submitted a letter to the EEOC on February 20, 2015, asserting that Vantage violated, *inter alia*, the ADA when it fired Poston. Along with the letter, counsel submitted an EEOC intake questionnaire. The questionnaire included Poston's name, Vantage's name and address, the nature of the discrimination claim, and Vantage's stated reason for the termination. At the end of the questionnaire, Poston was presented with two options: He could either check a box indicating that he "want[ed] to talk to an EEOC employee before deciding whether to file a charge," or he could check a box stating that he wanted "to file a charge of discrimination" and "authoriz[ing] the EEOC to look into the discrimination" claim. Poston checked the latter box. The questionnaire was signed "s/David Poston" but was unverified.[1] The transmittal letter stated that Poston had given his attorneys authority to sign the questionnaire. The EEOC's date stamp indicates receipt of the letter and intake questionnaire on February 20, 2015, and a "charge

---

[1] Verification is a requirement for all charges filed under the ADA. 29 C.F.R. § 1601.9. "Verified" means "sworn to or affirmed before a notary public, designated representative of the [EEOC], or other person duly authorized by law to administer oaths and take acknowledgements," or "supported by an unsworn declaration in writing under penalty of perjury." *Id.* § 1601.3(a).

2

number" is handwritten at the top. The charge number remained the same in future correspondence.

Five days later, the EEOC sent Poston two letters, one acknowledging receipt of his "charge" and the other requesting that Poston supplement the questionnaire with his address and phone number. That same day, the EEOC sent Vantage a "Notice of Charge of Discrimination." The notice stated that a "charge of employment discrimination" under the ADA had been filed based on a discharge occurring on October 2, 2014, but informed Vantage that "no action" was currently required and that "[a] perfected charge (EEOC Form 5)" would be mailed once received from the charging party.

On May 21, 2015, the EEOC sent Poston's attorney a letter stating that although it had notified Vantage of the initiation of "the charge filing process," it required a verified charge from Poston before beginning its investigation. Three months later, the EEOC reached out to Poston's attorney again, notifying him that it had still not received Poston's verified charge and requesting that Poston sign and return an EEOC Form 5 charge. Finally, on October 13, the EEOC received Poston's Form 5 charge, which was signed under penalty of perjury and dated September 7. In November, the EEOC informed Vantage of Poston's charge and requested a position statement. Vantage submitted the position statement, asserting that it fired Poston for poor work performance and that his filing was untimely. After conducting an investigation, the EEOC determined that there was reasonable cause to believe that Vantage violated the ADA. Conciliation efforts were unsuccessful, leading to the filing of an enforcement action.

EEOC's complaint pled that "all conditions precedent" to suit had been fulfilled. Vantage moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust administrative remedies. Vantage contended that the EEOC failed to plead the timeliness of Poston's charge of

No. 19-20541

discrimination, and it could not do so because the Form 5 formal charge was filed more than 300 days after his termination.[2] The EEOC responded that it complied with Federal Rule of Civil Procedure 9(c), which expressly permits alleging "generally that all conditions precedent have occurred or been performed." Moreover, Poston satisfied the charge-filing requirement by filing his intake questionnaire within 300 days of his termination. That the intake questionnaire was not verified was inconsequential, the EEOC contended, in light of *Edelman v. Lynchburg College*, 535 U.S. 106, 122 S. Ct. 1145 (2002), and Poston's subsequently verified Form 5 charge.

Vantage's reasoning persuaded the district court. In a terse, one-sentence judgment, it concluded that "[b]ecause the intake questionnaire is not a verified charge, this case is dismissed with prejudice." The EEOC filed a timely notice of appeal.

## STANDARD OF REVIEW

"Appellate review of a district court's dismissal for failure to state a claim under Rule 12(b)(6) is *de novo*." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 397 (5th Cir. 2010). Similarly, a district court's determination that a plaintiff failed to exhaust administrative remedies is reviewed *de novo*. *Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017).

## DISCUSSION

The primary issue on appeal is whether Poston's later-verified intake questionnaire filed with the EEOC sufficed to constitute a "charge" in satisfaction of the ADA's requirement that a charge be filed within 300 days of

---

[2] "A charge is 'filed' when it is received by the EEOC." *Lemaire v. McRae*, No. 15-1981, 2015 WL 9303121, at *2 (S.D. Tex. Dec. 22, 2015); *see* 29 C.F.R. § 1601.13(a). Poston's charge was received on October 13, 2015, 376 days after his termination.

the alleged unlawful employment action.   *See* 42 U.S.C. § 2000e-5(e)(1).[3]
Vantage's arguments are all contrary to considerable precedent.[4]

To begin, the Supreme Court has held that a questionnaire may qualify
as a charge if it satisfies the EEOC's charge-filing requirements,[5] and if it can
"be reasonably construed as a request for the agency to take remedial action to
protect the employee's rights or otherwise settle a dispute between the
employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389,
402, 128 S. Ct. 1147, 1158 (2008).   As Vantage notes,  the Court in *Holowecki*
prefaced its interpretation of the Age Discrimination in Employment Act by
warning against applying "rules applicable under one statute to a different
statute without careful and critical examination." *Id.* at 393.   Nonetheless,
every circuit (including this one) to have considered whether *Holowecki*'s
holding extends to Title VII and the ADA has determined that it does.   *See,*

---

[3] Although Poston's claim is for discrimination under the ADA, the ADA incorporates
Title VII's enforcement procedures.   42 U.S.C. § 12117(a); *see Dao v. Auchan Hypermarket*,
96 F.3d 787, 789 (5th Cir. 1996).

[4] In addition to the arguments discussed herein, Vantage argues that the case should
be dismissed because the EEOC failed to plead with specificity that Poston timely filed his
charge or that the EEOC provided Vantage notice of the charge.   These facts, however, are
conditions precedent to suit governed by Rule 9(c), which, as noted above, could be and were
generally pled. *See EEOC v. Standard Forge & Axle Co., Inc.*, 496 F.2d 1392, 1395 (5th Cir.
1974); *see also* CHARLES A. WRIGHT & ARTHUR R. MILLER, 5A FED. PRAC. & PROC. CIV. § 1303
(4th ed.) ("[I]f the defendant properly challenges the subdivision (c) allegation, a disputed
issue will have been raised that may be resolved only on a summary judgment motion or at
trial.").

[5] These requirements vary depending on the nature of the plaintiff's claim.   For claims
brought pursuant to the ADA, a charge must be in writing, signed, and verified.   29 C.F.R.
§ 1601.9.   Additionally, the charge must contain either (1) "[t]he full name, address, and
telephone number of the person making the charge . . . ; [t]he full name and address of the
person against whom the charge is made . . . ; [a] clear and concise statement of facts,
including pertinent dates, constituting the alleged unlawful employment practices . . . ; [i]f
known, the approximate number of employees of the respondent employer . . . ; and [a]
statement disclosing whether proceedings involving the alleged unlawful employment
practice have been commenced before a State or local agency charged with the enforcement
of fair employment practice laws," or (2) "a written statement sufficiently precise to identify
the parties, and to describe generally the action or practices complained of." *Id.* § 1601.12.

*e.g.*, *Patton v. Jacobs Engr. Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (ADA complaint); *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467–68 (7th Cir. 2016); *Aly v. Mohegan Council, Boy Scouts of Am.*, 711 F.3d 34, 42 n.1 (1st Cir. 2013); *Williams v. CSX Transp. Co.*, 643 F.3d 502, 508 & n.2 (6th Cir. 2011). Thus,  an intake questionnaire asserting claims under the ADA can qualify as a charge if it complies with *Holowecki'*s minimum standards.

The next question is whether Poston's intake questionnaire qualified as a charge under the *Holowecki* test.  The EEOC contends that it did, and we agree.  Except for the lack of initial verification, it satisfied the EEOC's charge regulations and must reasonably be construed as requesting the EEOC to take remedial action.  *Holowecki*, 552 U.S. at 402, 128 S. Ct. at 1158.  Vantage's arguments to the contrary are unavailing.

Vantage asserts that Poston's intake questionnaire and attorney transmittal letter together do not satisfy the requirements of 29 C.F.R. § 1601.12(a). Apart from quibbling about Vantage's corporate structure and whether the territorial waters of Equatorial Guinea and the Gulf of Mexico are sufficiently precise descriptions of Poston's work location, the essence of Vantage's critique lies in the lack of Poston's verification of the intake questionnaire and whether the papers requested EEOC to act on Poston's behalf.  We turn to verification later.  As for the specifics of Poston's questionnaire, the regulations require only that a charge be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  *Id.* § 1601.12(b).  Poston's questionnaire easily satisfied this standard.  *See also Melgar v. T.B. Butler Pub. Co.*, 931 F.3d 375, 379 (5th Cir. 2019) ("[T]he crucial element of a charge of discrimination is the factual statement contained therein." (quoting *Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982))).  It identifies Poston as the charging party and Vantage as

the employer,[6] states approximately how many employees Vantage has, and lists Poston's position, salary, and dates of hire and termination. The questionnaire also asserts that Vantage discriminated against Poston when it discharged him on October 2, 2014, "immediately after [he] finished short term disability" leave for a heart attack he suffered "on the job in Equatorial Guinea on July 2, 2014."

The intake questionnaire also satisfies *Holowecki*'s additional request-to-act condition. Poston checked "Box 2" on the questionnaire, which states "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above."[7] This constitutes a clear manifestation of Poston's intent for the EEOC take remedial action. *See Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 113 (3d Cir. 2014) ("Following *Holowecki*, the EEOC revised its Intake Questionnaire to require claimants to check a box to request that the EEOC take remedial action. . . . Under the revised form, an employee who completes the Intake Questionnaire and checks Box 2 unquestionably files a charge of discrimination.").

Vantage nonetheless maintains that Poston's intake questionnaire is deficient for the same reasons the questionnaire in *Melgar*, 931 F.3d 375, was found wanting. Vantage contends that an objective observer could not have reasonably believed that Poston's questionnaire sufficed as a charge because of its allegedly sparse content and because, in various correspondence, the

---

[6] Poston named as his employer "Vantage Drilling Co." rather than "Vantage International Management Company Pt. Ltd.," Poston's actual employer. But the employer address listed in the questionnaire was sufficient for the purpose of serving notice of Poston's charge. Naming the improper party was therefore inconsequential. *See EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 485 (5th Cir. 2014).

[7] In contrast, "Box 1" states, "I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC."

EEOC did not characterize the questionnaire as a charge. Unlike the questionnaire at issue in *Melgar*, however, Poston's questionnaire included a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). Further, although the EEOC's treatment of Poston's questionnaire was ambiguous as to its "charge" status, the ambiguity is not fatal. In some correspondence, the agency emphasized the need for Poston to verify his intake questionnaire before a formal charge could be filed, but the agency had assigned a "charge number" on initial receipt of the questionnaire and continued without interruption to use that number. Ultimately, the EEOC's characterization of the questionnaire is not dispositive. What constitutes a charge is determined by objective criteria. *Holowecki*, 552 U.S. at 404, 128 S. Ct. at 1159 ("It would be illogical and impractical to make the definition of charge dependent upon a condition subsequent over which the parties have no control.").

*Melgar* does not say otherwise. In *Melgar*, a state agency determined it was "unable to draft a charge on [the complainant's] behalf" given the deficiencies in the complainant's questionnaire. *Melgar,* 931 F.3d at 380. This court agreed with the agency's description and refused to treat the complainant's questionnaire as a charge on that basis. While a state agency's characterization may assist in the analysis of a filing's sufficiency under *Holowecki*—as it did in *Melgar*—the objective standard announced in *Holowecki* controls. And Poston's questionnaire satisfied that standard.

Vantage next asserts that because Poston's intake questionnaire was unverified, it was fatally defective as a charge at the outset, and the defect was not cured in time to avoid the 300-day filing deadline. In *Patton v. Jacobs Engineering Group, Inc.*, this court stated that the plaintiff's intake questionnaire, "not verified as required by EEOC regulations . . . alone cannot

be deemed a charge." 874 F.3d at 443. But *Patton* must be understood in its context and to avoid conflict with the Supreme Court's decision in *Edelman v. Lynchburg College*, 535 U.S. 106, 113, 118, 122 S. Ct. 1145, 1149, 1152 (2002). Taking the overriding point first, the Court made clear in *Edelman* that verification of a charge (and, by extension, an intake questionnaire that qualifies as a charge) can occur outside the filing period because the object of the verification requirement—to "protect[] employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury"—is not disturbed so long as the employee verifies the claim "by the time the employer is obliged to respond to the charge." *Id.* *Edelman* reached this result by affirming the EEOC's regulation that permits "technical" defects in charges to be amended and "relate back" to the original date of filing. *Id.* at 114; *see* 29 C.F.R. § 1601.12(b) ("A charge may be amended to cure technical defects or omissions, including failure to verify the charge . . . . Such amendments . . . will relate back to the date the charge was first received."). Such relation-back has been applied to the regulations' verification and signature requirements. *See Melgar*, 931 F.3d at 380 n.4 (noting that failure to sign an intake questionnaire "is not fatal in that the regulations allow technical defects to be cured by filing an amended charge, and the amended charge would relate back to the date the charge was first received" (citing 29 C.F.R. § 1601.12(b))); *Aly*, 711 F.3d at 41–44; *Williams*, 643 F.3d at 509.[8]

---

[8] Vantage suggests that *Edelman*'s holding only applies when a charge is verified shortly after the 300-day filing period. Nothing in *Edelman* suggests that its holding hinged on the number of days that passed between the end of the filing period and verification. Instead, its discussion is premised on the cure available for defects that are, even though statutorily mandated, "technical." That is not to say that *Edelman* has no outer limit. *See Edelman*, 535 U.S. at 115 n.9, 122 S. Ct. at 1150 n.9. But here, verification took place just about two months outside the 300-day filing window. And Vantage has not established any prejudice stemming from this delay.

Taken in context, there is no conflict between *Patton* and *Edelman*. The issue in *Patton* was the scope of the plaintiff's complaint of discrimination, i.e., whether it encompassed a failure to accommodate claim. That claim appeared, liberally construed, only in the plaintiff's unverified intake questionnaire, but the questionnaire was filed contemporaneously with his formal, verified charge. This court considered the filings in tandem "as part of the EEOC charge." *Patton*, 874 F.3d at 443. There was no question about timeliness or the relation-back doctrine discussed in *Edelman*. *Patton* cannot be read contrary to *Edelman* legally or factually, and its discussion has no proper bearing on this case.

The substance of Poston's intake questionnaire is virtually identical to the substance of his verified charge. The rule announced in *Edelman* applies, the purpose of the verification requirement was eventually satisfied, and Poston's later verification cures his deficient intake questionnaire.

Finally, Vantage asserts that treating the intake questionnaire as a charge would violate due process because it did not receive notice of the formal charge within ten days of the EEOC's receipt, as required by statute. 42 U.S.C. § 2000e-5(e)(1). But the agency's failure to provide notice of the charge within ten days does not per se violate due process or bar the filing of an enforcement action. Instead, the employer must demonstrate that it was prejudiced by the delay. *See EEOC v. Airguide Corp.*, 539 F.2d 1038, 1042 (5th Cir. 1976); *see also EEOC v. Shell Oil Co.*, 466 U.S. 54, 66 n.16, 104 S. Ct. 1621, 1629 n.16 (1984) ("[W]hen the EEOC has failed to notify the accused employer within 10 days of the filing of the charge, the courts have uniformly held that, at least in the absence of proof of bad faith on the part of the Commission or prejudice to the employer, the result is not to bar a subsequent suit either by the aggrieved party . . . or by the Commission . . . ."). Vantage has failed to demonstrate what

No. 19-20541

prejudice accrued from its receiving formal notice of Poston's charge in November 2015.

In sum, Poston's EEOC intake questionnaire was sufficient as a charge and, although verified outside of the filing period, was "timely" by virtue of the relation-back regulation.[9]  We note that the dilatory response of Poston's counsel to the EEOC's months-long requests to file his client's *verified* charge is inexcusable.  Counsel should never ignore applicable ADA law and regulations, especially when the agency reminds him.  The Supreme Court's decisions in *Edelman* and *Holowecki* were designed to accomplish fair and efficient resolution of discrimination complaints filed more often than not by pro se individuals.  That a plaintiff represented by counsel benefits from the Court's leniency is unfortunate.

## CONCLUSION

The district court erred in dismissing this enforcement action.  We **REVERSE** and **REMAND** for further proceedings without offering any opinion on the underlying merits.

---

[9] Vantage's reliance on *Carlson v. Christian Bros. Servs.*, 840 F.3d 466 (7th Cir. 2016), is misplaced.  *Carlson* interpreted the sufficiency of a "Complaint Information Sheet" filed with a state agency, not a charge filed with EEOC.  More importantly, the Complaint Information Sheet did not request relief and thus could not be considered a charge under *Holowecki. Id.* at 468.

11